853 A.2d 921

CAROL TARR, PLAINTIFF–RESPONDENT, v. BOB CIASULLI AND BOB CIASULLI'S MACK AUTO MALL, INC., DEFENDANTS–APPELLANTS, AND BOB CIASULLI AUTO GROUP, INC., MONMOUTH HONDA JEEP EAGLE, PATRICK GRIMALDI, JOHN DESANTIS, STEVEN FUENTAS, JOSEPH ANGELINI AND JOHN DOE ONE THROUGH TEN, DEFENDANTS.

Argued March 2, 2004—Decided August 9, 2004.

*Resa T. Drasin* and *Bradley M. Wilson* argued the cause for appellants (*Woehling & Freeman* and *Nowell Amoroso Klein Bierman,* attorneys).

*Ronald L. Lueddeke* argued the cause for respondent (*Mr. Lueddeke* and *Lynda Lee,* attorneys).

*Kathleen A. Dunnigan* submitted a brief on behalf of amicus curiae, National Employment Lawyers Association of New Jersey (*Dwyer & Dunnigan,* attorneys; *Ms. Dunnigan, Frederic J. Gross* and *Nancy E. Griffin,* on the brief).

Justice WALLACE delivered the opinion of the Court.

This case involves claims of hostile work environment and sexual harassment under New Jersey's Law Against Discrimination (LAD), *N.J.S.A.* 10:5–1 to –49. Plaintiff filed a complaint against Bob Ciasulli (Ciasulli) and various of his wholly-owned corporations and their employees. Prior to trial, all defendants were dismissed except for Ciasulli, Bob Ciasulli Auto Group (Auto Group), and Bob Ciasulli's Mack Auto Mall, Inc. (Mack Auto Mall). At trial, the court dismissed plaintiff's claim for emotional distress damages and the claim against Ciasulli individually. The jury found Mack Auto Mall liable for sexual harassment in the work-

place, but did not find that plaintiff suffered any damages. Despite her failure to prove damages, the court awarded attorney fees to plaintiff as a prevailing party. The Appellate Division reversed in part, and affirmed in part. *Tarr v. Bob Ciasulli's Mack Auto Mall, Inc.*, 360 *N.J.Super.* 265, 822 *A.*2d 647 (2003).

We granted certification, 178 *N.J.* 29, 834 *A.*2d 403 (2003), and granted *amicus curiae* status to the National Employment Lawyers Association of New Jersey (*amicus*). We now affirm in part, and reverse in part. We hold that plaintiff presented sufficient evidence of emotional distress damages to submit that issue to the jury, that the trial court properly dismissed the complaint against Ciasulli, and that to be considered a prevailing party under the LAD for purposes of entitlement to counsel fees, a party must receive some affirmative relief in the form of damages, injunctive relief, or declaratory relief.

## I.

Plaintiff began working for Mack Auto Mall in late July 1994 as a finance and insurance manager. Plaintiff's immediate supervisor, Kelly Bragg, reported to Patrick Grimaldi, the general manager of Mack Auto Mall. Plaintiff and Bragg shared office space located near the sales floor. Plaintiff worked at Mack Auto Mall until July 1995, when she left, allegedly because of sexual harassment in the workplace. Nevertheless, plaintiff returned to the job in August 1995 and remained until April 1996 when she again resigned because of the asserted sexual harassment.

At trial, plaintiff described the extensive and pervasive sexual harassment that she endured from a group of particularly offensive male employees. At various times, those employees would refer to women in demeaning gutter slang that we need not repeat here. Plaintiff testified that one employee would leave pornographic material on his desk, draw sexually explicit pictures on deal envelopes, open his legs and describe his sexual organ in detail, and discuss his sexual escapades with various women, some of whom were very young. Another employee regularly com-

mented to her about his wishes to have a sexual encounter with her, and propositioned her to have sex in a "broom closet." Plaintiff also had to deal with another employee who regularly made offensive sexual comments to her in the presence of strangers, intimating that his presence would sexually stimulate her.

Plaintiff stated that Grimaldi heard much of the abusive conduct, but made no effort to stop it. On one occasion he made a sexual comment when plaintiff dropped something in front of him. Also, Grimaldi once told plaintiff that she should loosen her blouse to help sell a warranty to a customer.

Plaintiff testified that the constant abuse made her feel extremely uncomfortable and led her to quit in July 1995. However, she returned a short time later because she needed the job and because Bragg, who was also subjected to sexual harassment, assured her that the situation would improve. Plaintiff's testimony of sexual harassment was corroborated by various witnesses, including Bragg and two other coworkers.

Plaintiff stated that she was constantly embarrassed by the disgusting comments and conduct of the male employees. She explained that she often wanted to crawl under her desk. Her frustration with the abusive work environment reached a point where she regularly cried on her way home from work. Plaintiff eventually quit in April 1996.

Plaintiff presented limited evidence of Ciasulli's direct involvement with the management of Mack Auto Mall. She testified that Ciasulli held monthly meetings attended by all sales personnel. Bragg testified that she considered Ciasulli her supervisor, and that she called him directly when her immediate supervisor could not resolve a problem. A former manager at Mack Auto Mall also testified that Ciasulli once told him to fire a salesperson following allegations of sexual harassment because the victim had threatened to file a complaint with the Attorney General's office.

At the close of plaintiff's case, the trial court dismissed plaintiff's emotional distress claim. The court ruled that the elements

of emotional distress are the same in both discrimination cases and in tort cases, and that the evidence that plaintiff was temporarily upset was insufficient to establish her claim.

Ciasulli also testified. He stated that he was the sole owner of the Auto Group dealerships and that there was a direct employee hotline through which employees could call his office. He added that if a corporate officer could not resolve a problem, an employee could come to him for a final resolution. He remarked that other female employees had filed sexual harassment claims, noting that their embellished complaints were suitable for a Hollywood script.

At the close of all the evidence, the trial court dismissed the complaint against Ciasulli, individually, and Auto Group. The case was submitted to the jury solely against plaintiff's employer, Mack Auto Mall. In answer to special interrogatories, the jury found that plaintiff was the victim of sexual harassment in the workplace, but that she suffered no economic loss. The court concluded that plaintiff was entitled to attorney fees as a prevailing party because the jury found in plaintiff's favor on the sexual harassment and hostile workplace claims.

Plaintiff appealed the dismissals of her emotional distress damages claim and of her complaint against Auto Group. All three defendants cross-appealed from the order awarding counsel fees. The Appellate Division reversed the order dismissing the emotional distress damages and the complaint against Ciasulli individually. *Tarr, supra,* 360 *N.J.Super.* at 280–81, 822 *A.*2d 647. The Appellate panel remanded for a determination of Ciasulli's individual liability, ordered a new trial on damages, both compensatory and punitive, and affirmed the orders dismissing the complaint against Auto Group and awarding counsel fees to plaintiff. *Ibid.*

## II.

The resolution of the emotional distress damages claim requires us to consider whether the LAD permits a lower evidentiary threshold for recovery of such damages than is necessary to

sustain a cause of action for intentional infliction of emotional distress.

## A.

We begin by reviewing the elements of a common law cause of action for intentional infliction of emotional distress. To prevail on such a claim "[t]he plaintiff must establish intentional and outrageous conduct by the defendant, proximate cause, and distress that is severe." *Buckley v. Trenton Saving Fund Soc'y,* 111 *N.J.* 355, 366, 544 *A.*2d 857 (1988). Generally, for the conduct to be actionable, "the emotional distress ... must be 'so severe that no reasonable [person] could be expected to endure it.'" *Id.* at 366–67, 544 *A.*2d 857 (quoting *Restatement (Second) of Torts* § 46 comment j at 77 (1965)). Because the severity of the emotional distress raises questions both of law and fact, the court "decides whether as a matter of law such emotional distress can be found, and the jury decides whether it has in fact been proved." *Id.* at 367, 544 *A.*2d 857.

Beyond a cause of action for emotional distress, our courts have long recognized emotional distress damages as a component of various intentional torts and breach of contract claims. *See, e.g., Zahorian v. Russell Fitt Real Estate Agency,* 62 *N.J.* 399, 416, 301 *A.*2d 754 (1973) (awarding compensatory damages for pain and suffering inflicted upon plaintiff in denial of apartment rental because of her sex and marital status); *Morris v. MacNab,* 25 *N.J.* 271, 280, 135 *A.*2d 657 (1957) (permitting recovery for wife's "shame, humiliation and mental anguish" caused by the defendant's fraudulent inducement into bigamous marriage); *Harris v. Delaware, Lackawanna & W. R.R.,* 82 *N.J.L.* 456, 458, 82 *A.* 881 (E. & A.1912) (holding conductor liable in trespass for "humiliation and indignity" caused by wrongful conversion of railroad ticket); *Kuzma v. Millinery Workers Union Local No. 24,* 27 *N.J.Super.* 579, 592, 99 *A.*2d 833 (App.Div.1953) (permitting recovery for mental anguish and emotional distress supported by tort of malicious interference with employment); *Spiegel v. Evergreen Ceme-*

*tery Co.,* 117 *N.J.L.* 90, 96–97, 186 *A.* 585 (Sup.Ct.1936) (approving damages for mental anguish caused by cemetery's breach of contract resulting in unnecessary exhumations); *Gray v. Serruto Builders, Inc.,* 110 *N.J.Super.* 297, 315–18, 265 A.2d 404 (Ch.Div. 1970) (ruling that Director of Civil Rights Division has authority to award damages for emotional distress caused by racial discrimination in renting).

### B.

The Legislature amended the LAD to authorize recovery of emotional distress damages for discrimination claims. *L.* 1990, *c.* 12, § 1. The LAD now mandates courts to construe its provisions broadly:

> The Legislature further finds that because of discrimination, people suffer personal hardships, and the State suffers a grievous harm. *The personal hardships include: economic loss; time loss; physical and emotional stress;* and in some cases severe emotional trauma, illness, homelessness or other irreparable harm resulting from the strain of employment controversies; relocation, search and moving difficulties; anxiety caused by lack of information, uncertainty, and resultant planning difficulty; career, education, family and social disruption; and adjustment problems, which particularly impact on those protected by this [A]ct. *Such harms have, under the common law, given rise to legal remedies, including compensatory and punitive damages. The Legislature intends that such damages be available to all persons protected by this [A]ct and that this [A]ct shall be liberally construed in combination with other protections available under the laws of this State.*
>
> [*N.J.S.A.* 10:5–3 (emphasis added).]

A post-amendment case permitted emotional distress damages under the LAD in the absence of expert testimony. *Rendine v. Pantzer,* 276 *N.J.Super.* 398, 648 A.2d 223 (App.Div.1994), *aff'd as modified,* 141 *N.J.* 292, 661 A.2d 1202 (1995). In that case, the female plaintiffs instituted an action under the LAD seeking damages for wrongful termination based on pregnancy. *Id.* at 421, 648 A.2d 223. The plaintiffs were awarded emotional distress damages. *Id.* at 439, 648 A.2d 223. On appeal, the defendant claimed the award for emotional distress should have been dismissed, or alternatively, the award was excessive because the plaintiffs did not submit any expert testimony or objective corroboration of their claims. *Id.* at 438, 442, 648 A.2d 223. The

Appellate Division affirmed the award, noting that "[t]he Legislature [in *N.J.S.A.* 10:5–3] has specifically authorized recovery for the type of emotional distress [the] plaintiffs claimed." *Id.* at 439, 648 *A.*2d 223. The court reasoned that:

> Although defendant's discriminatory treatment did not cause plaintiffs to relocate or suffer illness or homelessness, both plaintiffs described in detail their inconvenience and economic loss, physical and emotional stress, anxiety in searching for reemployment, uncertainty, career and family disruption and other adjustment problems. Plaintiffs' problems seem precisely the type for which the Legislature intended compensation.
>
> [*Id.* at 440, 648 *A.*2d 223.]

This Court affirmed the damage award, similarly relying on the 1990 amendment to the LAD authorizing emotional distress damages, and rejected the defendant's contention that expert testimony or independent corroborative evidence was necessary to support the award of emotional distress damages. *Rendine, supra,* 141 *N.J.* at 312, 661 *A.*2d 1202.

### C.

Federal authorities have reached the same conclusion under federal statutes. The Fifth Circuit Court of Appeals upheld an emotional distress award to a Title VII pregnancy discrimination plaintiff that was based solely on the plaintiff's testimony that her employer's discrimination caused her low self-esteem, serious hardship in procuring daycare for her newborn child, anxiety attacks, stress, and sleeplessness. *Migis v. Pearle Vision, Inc.,* 135 *F.*3d 1041, 1045–46 (5th Cir.1998). In affirming the award, the Fifth Circuit concluded that the plaintiff's testimony was sufficiently detailed to support the award. *Id.* at 1047. The court also observed that corroborating testimony and medical evidence are not required in every case involving nonpecuniary compensatory damages. *Ibid.; see also Smith v. Northwest Fin. Acceptance, Inc.,* 129 *F.*3d 1408, 1413 (10th Cir.1997) (finding Title VII plaintiff's testimony that supervisor's offensive comments were intolerable and caused humiliation and loss of self-respect was sufficient to establish hostile work environment); *Kim v. Nash Finch Co.,* 123 *F.*3d 1046, 1065 (8th Cir.1997) (affirming emotional distress

damages in Title VII claim supported solely by employee's and spouse's testimony about sleeplessness, stress anxiety, humiliation, and depression); *Turic v. Holland Hospitality, Inc.*, 85 *F.*3d 1211, 1215 (6th Cir.1996) ("A plaintiff's own testimony, along with the circumstances of a particular case, can suffice to sustain the plaintiff's burden [to prove emotional distress]."); *Bolden v. Southeastern Pa. Transp. Auth.*, 21 *F.*3d 29, 34 (3d Cir.1994) (holding expert testimony not necessary to corroborate emotional distress damages in federal civil rights action); *DeNieva v. Reyes*, 966 *F.*2d 480, 487 (9th Cir.1992) (affirming damages award premised solely on plaintiff's testimony about emotional and physical distress including insomnia, dizziness, and vomiting); *Secretary, U.S. Dep't of Hous. & Urban Dev. ex rel. Herron v. Blackwell*, 908 *F.*2d 864, 872–73 (11th Cir.1990) (upholding emotional distress damages for housing discrimination based on plaintiff's testimony regarding humiliation, insomnia, and headaches).

### D.

The preceding cases illustrate that claims for emotional distress of varying degrees have been recognized where a wrong is willful. A cause of action asserting discrimination is willful rather than negligent. *Gray, supra,* 110 *N.J.Super.* at 315, 265 *A.*2d 404.

We have declared that the purpose of the LAD is "the eradication 'of the cancer of discrimination.'" *Fuchilla v. Layman,* 109 *N.J.* 319, 334, 537 *A.*2d 652 (quoting *Jackson v. Concord Co.,* 54 *N.J.* 113, 114, 253 *A.*2d 793 (1969)), *cert. denied,* 488 *U.S.* 826, 109 *S.Ct.* 75, 102 *L.Ed.*2d 51 (1988). The LAD expressly reflects the public policy considerations of protection of "the civil rights of individual aggrieved employees [and protection of] the public's strong interest in a discrimination-free workplace." *Lehmann v. Toys 'R' Us, Inc.,* 132 *N.J.* 587, 600, 626 *A.*2d 445 (1993). Underlying the LAD's expansive language advocating the elimination of discrimination is also the directive that we compensate victims for economic and noneconomic injuries attributable to an employer's discriminatory conduct. *N.J.S.A.* 10:5–3.

We are convinced that the Legislature intended victims of discrimination to obtain redress for mental anguish, embarrassment, and the like, without limitation to severe emotional or physical ailments. We adopt as our own, the reasoning of Judge Pressler in writing for the Appellate Division.

> To suffer humiliation, embarrassment and indignity is by definition to suffer emotional distress. Emotional distress actually suffered in that manner by the victim of proscribed discrimination is compensable without corroborative proof, permanency of response, or other physical or psychological symptoms rendering the emotional distress severe or substantial. The quantum of compensation, which may be nominal in the terms we have described, is dependent upon the relevant factors we have identified including duration of the discriminatory conduct, its public nature, and its content and may be enhanced by such additional proofs of indicia of suffering as plaintiff may adduce. We add only that the duration and the content of the conduct asserted here clearly, in our view, warrants an award in some amount. No reasonable woman can be expected to have endured the constant and prolonged barrage of the extraordinarily demeaning and degrading sexual harassment to which this plaintiff was subjected without humiliation, embarrassment and loss of personal dignity and that was the emotional distress to which she testified. We leave the question of quantum to the fact finder.

> [*Tarr, supra,* 360 *N.J.Super.* at 276–77, 822 *A.*2d 647.]

Our dissenting colleagues invoke *Taylor v. Metzger,* 152 *N.J.* 490, 706 *A.*2d 685 (1998), to reach a contrary conclusion concerning the standard of proof for emotional distress damages under the *LAD.* There, the Court found sufficient evidence of workplace discrimination for plaintiff to proceed on her claim of LAD racial discrimination. Further, the Court clarified the test for an intentional infliction of emotional distress cause of action as set forth in *Buckley, id.* at 508–09, 706 *A.*2d 685, and found that the plaintiff's evidence was sufficient to support that cause of action as well, *id.* at 521, 706 *A.*2d 685. There was no need for the Court to address the issue we face today because the "evidence . . . relevant to [the] plaintiff's claim of emotional injury would overlap, if not duplicate, that proffered to establish her LAD claim." *Id.* at 509, 706 *A.*2d 685. Here, plaintiff's claim is limited to her proofs under the LAD, and if she prevails, she may recover attorney fees that are not available for a cause of action for intentional infliction of emotional distress.

This Court noted long ago that "[g]iven the breadth of individual and societal harms that flow from discrimination and harassment, to limit the LAD's application to only those cases in which the victim suffered, or could have suffered, serious psychological harm would be contrary to its remedial purpose." *Lehmann, supra,* 132 *N.J.* at 609, 626 *A.*2d 445. "It is the harasser's conduct, not the plaintiff's injury, that must be severe or pervasive." *Id.* at 610, 626 *A.*2d 445.

In sum, we are satisfied that compensatory damages for emotional distress, including humiliation and indignity resulting from willful discriminatory conduct, are remedies that require a far less stringent standard of proof than that required for a tort-based emotional distress cause of action. We hold that in discrimination cases, which by definition involve willful conduct, the victim may recover all natural consequences of that wrongful conduct, including emotional distress and mental anguish damages arising out of embarrassment, humiliation, and other intangible injuries. Accordingly, we affirm that portion of the Appellate Division's judgment remanding for a new trial on damages.

### III.

We turn now to address whether there was sufficient evidence to submit the issue of Ciasulli's individual liability to plaintiff for sexual harassment. The Appellate Division concluded that there was sufficient evidence that Ciasulli was negligent in implementing workplace programs and policies to prevent sexual harassment. *Id.* at 279–80, 822 *A.*2d 647. Plaintiff and *amicus* urge that we reach that same conclusion. Ciasulli maintains that although he was plaintiff's ultimate supervisor, there was no evidence that he aided or abetted in the sexual harassment, which is a necessary requirement to impose individual liability.

*N.J.S.A.* 10:5–12a prohibits unlawful employment practices and unlawful discrimination by an employer. An employer "includes all persons as defined in subsection a .... unless otherwise specifically exempt under another section of [the LAD], and

includes the State, any political or civil subdivision thereof, and all public officers, agencies, boards or bodies." *N.J.S.A.* 10:5–5e. Subsection a. defines "[p]erson" as "one or more individuals, partnerships, associations, organizations, labor organizations, corporations, legal representatives, trustees, trustees in bankruptcy, receivers, and fiduciaries." *N.J.S.A.* 10:5–5a. Under a plain reading of these definitions an individual supervisor is not defined as an "employer" under the LAD. Nevertheless, it is unlawful "[f]or any person, whether an employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden [under the LAD]," *N.J.S.A.* 10:5–12e, and such conduct may result in personal liability.

We have yet to address the meaning of "aiding and abetting" under the LAD. Because the words "aid" and "abet" are not defined in the Act, the general principles of statutory construction apply. First, in interpreting the statute, we look to the "ordinary and well understood meaning" of the words therein. *Safeway Trails, Inc. v. Furman,* 41 *N.J.* 467, 478, 197 *A.*2d 366, cert. denied, 379 *U.S.* 14, 85 *S.Ct.* 144, 13 *L.Ed.*2d 84 (1964). Also, we construe words in a series consistent with the words surrounding them. *Gilhooley v. County of Union,* 164 *N.J.* 533, 542, 753 *A.*2d 1137 (2000).

Here, "aid" and "abet" are included with the series of words "incite," "compel," and "coerce." The common dictionary definitions of these words prove helpful. Among other things, "aid" means "[t]o give help or assistance to," *Webster's II New College Dictionary* 23 (rev. updated ed.2001); "abet" means "[t]o incite, encourage, or assist, esp. in wrongdoing," *id.* at 2; "incite" means "[t]o provoke to action," *id.* at 560; "compel" means "to force, drive, or constrain," *id.* at 229; and "coerce" means "[t]o force to act or think in a given way by pressure, threats, or intimidation," *id.* at 217. All of the words used are similar in meaning and require active and purposeful conduct.

The Third Circuit Court of Appeals predicted that we would define the terms "aiding" and "abetting" consistent with the

*Restatement (Second) of Torts* § 876(b) (1979). *Failla v. City of Passaic,* 146 *F.*3d 149, 158 (1998) ("[W]e predict that the New Jersey Supreme Court would find that an employee aids and abets a violation of the LAD when he [or she] knowingly gives substantial assistance or encouragement to the unlawful conduct of [the] employer."); *see also Hurley v. Atlantic City Police Dep't,* 174 *F.*3d 95, 129 (3d Cir.1999) (predicting that New Jersey courts would impose aiding and abetting liability only on supervisory employees), *cert. denied,* 528 *U.S.* 1074, 120 *S.Ct.* 786, 145 *L.Ed.*2d 663 (2000).

■ Section 876(b) of the Restatement imposes concert liability on an individual if he or she "knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself." We agree that the *Restatement* provides the proper standard by which to define the terms "aid" or "abet" under the LAD. Also, the *Restatement* definition is consistent with the common usage of those terms. Thus, in order to hold an employee liable as an aider or abettor, a plaintiff must show that " '(1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance; [and] (3) the defendant must knowingly and substantially assist the principal violation.' " *Hurley, supra,* 174 *F.*3d at 127 (citations omitted).

■ With respect to that determination, the comments to section 876 provide a list of five factors, relied on by the *Hurley* court, to assess whether a defendant provides "substantial assistance" to the principal violator. Those factors are: (1) the nature of the act encouraged, (2) the amount of assistance given by the supervisor, (3) whether the supervisor was present at the time of the asserted harassment, (4) the supervisor's relations to the others, and (5) the state of mind of the supervisor. *Restatement (Second) of Torts, supra,* § 876(b) comment d; *Hurley, supra,* 174 *F.*3d at 127 n. 27.

Applying those factors here, we conclude that plaintiff failed to present evidence that Ciasulli aided and abetted the employees in the sexual harassment of plaintiff. There was no evidence that Ciasulli encouraged any of the wrongful conduct against plaintiff, that he assisted the wrongdoers, or that he was even present when the wrongful conduct occurred. At best, the record discloses that Ciasulli, as the supervisor in the network of auto dealerships, negligently supervised his employees. That is insufficient to conclude that he provided substantial assistance to the wrongdoers to impose individual liability under *N.J.S.A.* 10:5–12e. Consequently, we affirm the trial court's dismissal of the complaint against Ciasulli.

## IV.

In light of our remand for a new trial on damages, although we need not decide whether a plaintiff may be considered a "prevailing party" where the jury finds plaintiff was the victim of sexual harassment but does not award damages, for purposes of completeness and guidance in future cases we add the following.

*N.J.S.A.* 10:5–27.1 provides that "the prevailing party may be awarded a reasonable attorney's fee as part of the cost." We have cited with approval the federal view that a prevailing party is one who succeeds " 'on any significant issue in litigation [that] achieves some of the benefit the parties sought in bringing suit.' " *Szczepanski v. Newcomb Med. Ctr.,* 141 *N.J.* 346, 355, 661 *A.*2d 1232 (1995) (quoting *Hensley v. Eckerhart,* 461 *U.S.* 424, 433, 103 *S.Ct.* 1933, 1938, 76 *L.Ed.*2d 40, 50 (1983)). The United States Supreme Court has observed that "[t]he touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute." *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.,* 489 *U.S.* 782, 792–93, 109 *S.Ct.* 1486, 1494, 103 *L.Ed.*2d 866, 877 (1989) (awarding plaintiff organizations prevailing party status because judgment vindicated public employees First Amendment rights and materially altered school district's policy).

Subsequently, in *Farrar v. Hobby*, 506 *U.S.* 103, 113 *S.Ct.* 566, 121 *L.Ed.*2d 494 (1992), the Court analyzed the standard for awarding attorney's fees to a prevailing party under 42 *U.S.C.A.* § 1988. The Court defined the prevailing party status as follows:

> The plaintiff must obtain an enforceable judgment against the defendant from whom fees are sought, or comparable relief through a consent decree or settlement. Whatever relief the plaintiff secures must directly benefit him at the time of the judgment or settlement. Otherwise the judgment or settlement cannot be said to "affec[t] the behavior of the defendant toward the plaintiff." Only under these circumstances can civil rights litigation effect "the material alteration of the legal relationship of the parties" and thereby transform the plaintiff into a prevailing party. In short, a plaintiff "prevails" when actual relief on the merits of his [or her] claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff.
>
> [*Id.* at 111–12, 113 *S.Ct.* at 573, 121 *L.Ed.*2d at 503 (internal citations omitted) (first alteration in original).]

The Court held that a party who receives only nominal damages is still deemed to be a prevailing party in the context of awarding attorney's fees under 42 *U.S.C.A.* § 1988. *Id.* at 113, 113 *S.Ct.* at 574, 121 *L.Ed.*2d at 504. However, the Court also concluded that the nominal damages "bear on the propriety of fees awarded under § 1988," *id.* at 114, 113 *S.Ct.* at 574, 121 *L.Ed.*2d at 505, because the "degree of the plaintiff's overall success goes to the reasonableness of a fee award," *ibid.*, 506 U.S. at 114, 113 *S.Ct.* at 574, 121 *L.Ed.*2d at 505 (citation and internal quotation marks omitted). There, the plaintiffs received one dollar in damages and the Court affirmed the denial of attorney's fees, observing that "[a] plaintiff who seeks compensatory damages but receives no more than nominal damages" is the type of prevailing party that is entitled to "no [attorney's] fee[s] at all." *Id.* at 115, 113 *S.Ct.* at 575, 121 *L.Ed.*2d at 505–06. The Court concluded that there must be a " 'relationship between the extent of success and the amount of the fee award.' " *Id.* at 115–16, 113 *S.Ct.* at 575, 121 *L.Ed.*2d at 506 (quoting *Hensley, supra,* 461 *U.S.* at 438, 103 *S.Ct.* at 1941, 76 *L.Ed.*2d at 54).

We are persuaded by the reasoning of the United States Supreme Court and hold that a plaintiff who is awarded some affirmative relief by way of an enforceable judgment against

defendant or other comparable relief through a settlement or consent decree is a prevailing party under *N.J.S.A.* 10:5–27.1 of the LAD. Moreover, in our view, a plaintiff who is awarded nominal damages is a prevailing party under the LAD. In the case of a nominal damages award, however, we leave to the discretion of the trial court whether to award minimal attorney's fees or no fees at all.

## V.

We affirm that part of the judgment of the Appellate Division that remanded to the trial court for a new trial on damages. We reverse the judgment imposing individual liability upon Ciasulli and reverse and remand for reconsideration of the award of attorney's fees.

Justice LaVECCHIA, concurring in part and dissenting in part.

This appeal requires us yet again to interpret the Law Against Discrimination, *N.J.S.A.* 10:5–1 to –49(LAD). Specifically, we must determine whether the LAD carries its own standard of proof for an award of compensatory damages for emotional distress caused by sexual harassment in the workplace. In my view, such a LAD claimant must demonstrate entitlement to damages for infliction of emotional distress caused by sexual harassment under the proof requirements set forth in our decision in *Taylor v. Metzger*, 152 *N.J.* 490, 706 *A.2d* 685 (1998). In the absence of textual support in the LAD for a lesser standard of proof than that which we established in *Taylor* for the common law tort of infliction of emotional distress committed in a harassment setting, I would not lessen the proof requirements for compensatory damages.

## I.

The cause of action for intentional infliction of emotional distress, which we first recognized as part of our common law in *Buckley v. Trenton Saving Fund Society*, 111 *N.J.* 355, 544 *A.2d*

857 (1988), was reformulated for the specific context of harassment claims under LAD in *Taylor, supra,* 152 *N.J.* at 508–21, 706 *A.2d* 685. *Taylor* squarely brought before the Court the standard to be applied to claims of intentional infliction of emotional distress where that cause of action is based on discriminatory conduct and joined with causes of action for discrimination under the LAD. Writing for the Court, Justice Handler expanded the test for intentional infliction of emotional distress articulated in *Buckley, supra,* which required a plaintiff to "establish intentional and outrageous conduct by the defendant, proximate cause, and distress that is severe." 111 *N.J.* at 366, 544 *A.2d* 857.[1]

Our expansion of *Buckley* in *Taylor* was manifest;[2] however, we did not alter the basic requirement that only "severe" distress will sustain an award of compensatory damages under our common law, and mentioned specifically that the plaintiff in *Taylor* both "sought medical treatment for [her] emotional anguish" and "claimed to suffer harm that was both severe and enduring." *Id.* at 515, 706 *A.2d* 685. Although we did not hold that a claim for compensatory damages for emotional distress arising in the context of a LAD discrimination claim specifically required expert or

---

[1] *Buckley, supra,* set forth a four-prong test for establishing a cause of action for intentional infliction of emotional distress: (1) intentional conduct; (2) outrageous conduct; (3) proximate cause; and (4) severe emotional distress. 111 *N.J.* at 366, 544 *A.2d* 857. Among other things, *Taylor* essentially subdivided the fourth prong of *Buckley* to require both (a) subjective and (b) objective severity. *Taylor, supra,* 152 *N.J.* at 516–18, 706 *A.2d* 685.

[2] First, we "conclude[d] that power dynamics of the workplace [could] contribute to the outrageousness of defendant's conduct." *Taylor, supra,* 152 *N.J.* at 511, 706 *A.2d* 685. Second, we held that the severity of a person's alleged emotional distress has both a subjective component, measured by the actual evidence of severe emotional distress, *id.* at 514–15, 706 *A.2d* 685, and an objective component, such that "people cannot recover for idiosyncratic emotional distress that would not be experienced by average persons." *Id.* at 515, 706 *A.2d* 685. In respect of the objective component, we held that "[w]henever an intentional infliction of emotional distress claim arises out of conduct that also constitutes invidious discrimination [under the LAD], the average person standard must be adapted to reflect those characteristics of the plaintiff that are the focus of the alleged discrimination." *Id.* at 516–17, 706 *A.2d* 685.

medical corroboration as a matter of law, we held that that the plaintiff had submitted sufficient evidence to "permit[ ] a rational factfinder to conclude that she suffered severe emotional distress." *Ibid.* Cf. *Rendine v. Pantzer*, 141 *N.J.* 292, 312–13, 661 *A.*2d 1202 (1995) (citing *Bolden v. Southeastern Pa. Transp. Auth.*, 21 *F.*3d 29, 34 (3d Cir.1994) (noting that LAD claim for emotional distress damages, like analogous federal civil rights claims, does not require, as matter of law, expert testimony to corroborate claimant's alleged emotional distress)).

In my view, the majority's decision renders *Taylor*, which post-dated the 1990 LAD amendments that the majority and the Appellate Division find to be so persuasive, a nullity. In *Taylor*, Justice Handler painstakingly analyzed the circumstances in which a plaintiff brings both a claim of discrimination under the LAD and a common law claim for intentional infliction of emotional distress, and both claims arise from the same discriminatory conduct. It is curious that our Court would have gone to such lengths to canvass decisions from around the country concerning claims of intentional infliction of emotional distress based on discrimination if one of the very causes of action then before it, a discrimination claim under the LAD, subsumed the entire analysis. The Court's careful analysis in *Taylor* is now inoperative in that the majority holds that the LAD authorizes a standard for obtaining compensatory damages for emotional distress that is far below that articulated in *Taylor*. As demonstrated below, this case is indistinguishable from, and should be controlled by, our holding in *Taylor*.

## II.

Plaintiff's seven-count Complaint included three counts against Bob Ciasulli Mack Auto Mall, Inc. (Mack): Count I for hostile work environment created by sexual harassment and discrimination, in violation of the LAD; Count II for constructive discharge based on sexual harassment and discrimination, in violation of the LAD; and Count VII for intentional infliction of emotional dis-

tress.   Each count "demand[ed] judgment against [Mack] as fol-
lows:  (1) Compensatory Damages[;]  (2) Punitive Damages[;]  (3)
Equitable relief to the fullest extent permitted by the LAD;  (4)
Costs of Suit;  (5) Attorney's Fees to the fullest extent permitted
by the LAD and the law;  (6) Lawful Interest;  [and] (7) Such
other relief as the Court deems equitable and appropriate."

Before trial, Mack filed a motion for summary judgment to
dismiss Count VII for common law intentional infliction of emo-
tional distress, and to compel discovery concerning the nature of
plaintiff's asserted emotional trauma.   Plaintiff did not oppose the
motion to dismiss Count VII.[3]   Thus, we note that the common
law emotional distress claim was dismissed from plaintiff's action,
and she proceeded to trial only on Counts I and II.

The ensuing jury trial spanned nearly two weeks.   During trial,
there was ample testimony concerning the outrageously hostile
and discriminatory environment at Mack's place of business, which
both the majority, *ante* at 74–76, 853 *A.*2d 923–24, and the
Appellate Division have well detailed.   *Tarr, supra,* 360 *N.J.Su-
per.* at 268–70, 822 *A.*2d 647.   The vivid portrayal of an "abusive
environment" that plaintiff endured in the workplace was fairly
described by the Appellate Division as "despicable, insulting,
reprehensible, crude, gross, demeaning, and contemptible[.]"   *Id.*
at 270, 822 *A.*2d 647.   Despite that portrayal, plaintiff's

> testimony respecting her response ... was not extensive.  Although she apparent-
> ly had mental health care after leaving Mack ..., she chose not to offer expert
> testimony.  She testified only to her acute embarrassment and humiliation, [caused
> by one co-worker's] remarks in the presence of persons not employed by the
> dealership, [that] made her turn 'beet red' and 'want to crawl under my desk.'
> [*Ibid.*].

Plaintiff also testified that she would cry " 'all the way home from
being frustrated, from being intimidated, from feeling that you

---

[3] The trial court compelled plaintiff to produce for *in camera* review docu-
ments relating to plaintiff's medical and social worker visits to which she
adverted when deposed, and which might bear on her allegation of emotional
distress.

couldn't breathe around there [but you were gonna get yelled at for something or you were in fear of losing your job].' " *Ibid.*[4]

At the close of plaintiff's case-in-chief, Mack moved to strike all evidence of plaintiff's emotional distress from the jury's consideration on the LAD claims. The trial court granted Mack's motion, ruling from the bench, in pertinent part, as follows:

> But I think you're talking about recovering in a case like this for emotional distress, I think that you need more than a temporary upsetment. And certainly if you're trying to recover for long-term medically diagnosed emotional injury or psyche injury, that that's obviously something that requires an expert opinion, and that's not here.
>
> But the cases also talk about, for example, the emotional distress that is naturally attendant to somebody who suffers an injury. That's something the jury can consider. In this particular case the allegation is that the plaintiff—or the plaintiff testified that on occasion she would cry as a result of the treatment that she received at work, and I don't know that that really even rises to the level of being the type of injury that in the absence of expert testimony which would then indicate some other type of treatment, that the jury is free to assess an award.

The jury returned a verdict finding that plaintiff was the victim of sexual harassment, including "that the working environment was intimidating, hostile and abusive." However, the jury did not award any compensatory damages to plaintiff, based on its determination that she suffered no past or future lost earnings as a result of defendant's sexual harassment. Therefore, no punitive damages were awarded. *Tarr, supra,* 360 *N.J.Super.* at 267, 822 *A.*2d 647; *see generally N.J.S.A.* 2A:15–5.13c (stating that punitive damages are available only if compensatory damages, rather than nominal damages, have been awarded). The trial court did award plaintiff attorney's fees pursuant to *N.J.S.A.* 10:5–27.1, "concluding that because plaintiff had proved a sexually harassing hostile workplace, she was a prevailing party despite her failure to prove damages." *Tarr, supra,* 360 *N.J.Super.* at 267, 822 *A.*2d 647.

In a motion for a new trial pursuant to *Rule* 4:49–1(a), plaintiff again raised the issue of compensatory damages for emotional distress, asserting that 1990 amendments to the LAD created a

---

[4] The bracketed material comes from plaintiff's trial testimony.

lower threshold for obtaining compensatory damage for emotional distress. The trial court denied plaintiff's motion, ruling from the bench, in relevant part, as follows:

[T]he [1990] amendments ... I interpret pretty clearly as not expanding the types of damages that somebody can have, but basically recognizing that an employee would have damages that might reasonably flow from an act of discrimination that could be compensable and that could be the subject of compensatory damages. What are the purposes of compensatory damages? Compensatory damages are intended to make a litigant whole for a loss, no more, no less. Compensatory damages are not intended to punish a litigant for the wrongdoing but rather to make a party whole. Really, the plaintiff did not testify as to any other types of loss.

\* \* \* \*

I guess the question is whether or not—I think the amendments because they use the term, "physical and emotional distress," and in some cases, "severe emotional trauma," that they are talking about a level that goes beyond just a temporary upsetment. That was the term that I used. Granted, we may not be talking about something that requires a showing of medical treatment or medication in order to meet the emotional distress things. By analogy, I would say that in a personal injury action emotional distress standing alone with nothing else is generally not compensable. Emotional distress attendant to other factors like an emotional distress that one endures as a natural consequence of an injury would be an element of compensatory damages because in order to reconstruct the plaintiff, in effect, before the harm is done, you're recompensing [him or her] for a loss. In that case, the loss of their emotional distress. But, really, the plaintiff in this case didn't really go into any detail as to whether or not her emotional distress, if any, was caused by a frustration as the result of the job or whether it was as to other factors, or whether it rose to the level of being any type of recognized level of emotional distress that we recognized in the law. I don't think that when the Legislature amended the law in 1990 that it [in]tended to reduce the bar and say that litigants in [LAD] cases were going to be treated differently than other litigants in asserting common law claims founded upon emotional distress. That was why I found that there really was no testimony in the case to support a claim for emotional distress.

\* \* \* \*

The Legislature never intended to create a new form of damages not recognized in common law, but [it] did intend to codify the availability of damages that were normally available to the plaintiff as a function of common law in a personal injury type of action, tort or contract. The reason is that you have to remember why they did what they did in 1990, and that was to respond to the *Shaner[ v. Horizon Bancorp.,* 116 *N.J.* 433, 561 *A.*2d 1130 (1989)] decision which raised, in effect,

almost like as an afterthought the question of whether or not damages that are recognized at common law should be the prime focus of [the LAD].

So I'm not saying that emotional distress damages have to be proven by expert testimony, although that would be preferable, or that the plaintiff has to show that she sought treatment or anything for it. But she has to testify as to something that is related to the incident in question and it has to be something more than just sort of a passing problem. And that's what happened in this case was that she made a passing reference to crying in the car and there was basically no testimony to indicate that that was related to the incident in question or to other problems or that it was substantial, that it was significant or that it caused her any continuing emotional distress.

The Appellate Division reversed the trial court on the issue of compensatory damages for emotional distress by relying on *Gray v. Serruto Builders, Inc.*, 110 *N.J.Super.* 297, 316–17, 265 *A.2d* 404 (Ch.Div.1970), in which a chancery court awarded nominal damages to a plaintiff based on racial discrimination, and *Zahorian v. Russell Fitt Real Estate Agency*, 62 *N.J.* 399, 412, 301 *A.2d* 754 (1973), in which this Court affirmed an "incidental award [to the plaintiff] for pain and suffering" recommended by a Hearing Examiner with the New Jersey Division on Civil Rights (Division) and adopted by the Division Director. From those earlier decisions, the Appellate Division extrapolated that a plaintiff does not have to prove severe and substantial emotional harm to reach the jury on compensatory damages for emotional distress in the context of the LAD. *Id.* at 276–77, 822 *A.2d* 647. It found that the 1990 amendments to the LAD "confirmed" the "authority" of *Gray* and *Zahorian. Id.* at 273, 822 *A.2d* 647. We granted defendants' petition for certification. 178 *N.J.* 29, 834 *A.2d* 403 (2003).

### III.

Persons seeking redress under the LAD either may file a complaint (1) with the Division or (2) in the Superior Court of New Jersey, by jury trial if requested. *N.J.S.A.* 10:5–13. Pursuant to the LAD, "*[a]ll remedies available in common law tort actions shall be available to prevailing parties. These remedies are in addition to any provided by this act or any other statute.*" *Ibid.* (emphasis added). Those two sentences mandate that for LAD

claims, in addition to the equitable remedies available to courts and the Division under *N.J.S.A.* 10:5–17, prevailing parties also may seek traditional tort remedies. Plaintiff's thesis is that that language in *N.J.S.A.* 10:5–13 expresses a legislative intent to lower, in LAD actions, the proof standard that otherwise would apply in a common law tort action to obtain compensatory damages for emotional distress caused by discriminatory conduct. However, that theory is not supported by text, legislative history, or prior decisional law.

### A.

We turn first to the legislative history of the LAD to examine whether the Legislature intended the disputed language in *N.J.S.A.* 10:5–13 to apply a standard of proof lower than that which the common law requires for an award of compensatory damages for emotional distress caused by discriminatory conduct. When the LAD was enacted in 1945, an action under the statute could be brought only before the Division. In 1979, amendments to the LAD authorized, "[t]he right to bring judicial action as an alternative to administrative relief." *L.* 1979, *c.* 404. In *Shaner, supra*, we analyzed the impact that the 1979 amendments to the LAD had on causes of action and remedies available under the statute. 116 *N.J.* at 437–46, 561 *A.2d* 1130. Although we observed that the Division had awarded compensatory damages for economic losses, *id.* at 439, 561 *A.2d* 1130 (citing *Jackson v. Concord Co.*, 54 *N.J.* 113, 126, 253 *A.2d* 793 (1969)), and incidental damages for "pain and suffering or personal humiliation," *ibid.* (citing *Zahorian, supra*, 62 *N.J.* at 416, 301 *A.2d* 754), we emphasized that such monetary awards "should not be 'a primary item' of relief ... but must be ancillary to and correlated with the grant of broader remedies, which in combination are 'reasonably calculated to eliminate the effects of the discrimination.'" *Ibid.* (quoting *Zahorian, supra*, 62 *N.J.* at 413, 416, 301 *A.2d* 754).

We characterized our courts' powers under the LAD as largely coextensive with those vested in the Division. *Id.* at 440, 561 *A.2d*

1130. The broad scope of those powers, including both "an authority that parallels the Division's enumerated powers, which are directed to the rectification of work-place discrimination," *ibid.*, and the ability to award incidental or nominal monetary awards, *ibid.* (citing *Zahorian, supra,* 62 *N.J.* at 413–14, 301 *A.*2d 754; *Gray, supra,* 110 *N.J.Super.* at 317, 265 *A.*2d 404), led us to conclude that a court's power to enforce the LAD was equitable in nature. *Id.* at 441, 561 *A.*2d 1130. We found that granting the right to a jury trial could subvert the LAD's goals of providing broad remedies and an efficient forum to vindicate grievances, given the "attendant delays and inherent limitations of the scope of jury verdicts." *Ibid.* *Shaner* thus held that there was no right to a jury trial under the LAD. *Id.* at 446, 561 *A.*2d 1130.

Almost immediately thereafter, the Legislature amended the LAD to overrule *Shaner.* Bipartisan sponsors advanced an amendatory bill that added a right to jury trial for LAD actions, as well as the currently disputed language to *N.J.S.A.* 10:5–13. *L.* 1990, *c.* 12, § 2. In addition, the bill inserted a paragraph in the declarations section of the LAD, *N.J.S.A.* 10:5–3, that listed certain harms traditionally compensable in our common law of tort. *See L.* 1990, *c.* 12, § 1.

The Assembly Judiciary, Law and Public Safety Committee Statement on the Assembly Bill Substitute for Assembly Bill Nos. 2872, 2118 and 2228, provided as follows:

> In *Shaner v. Horizon Bancorp,* 116 *N.J.* 433, 561 *A.*2d 1130 (1989), the New Jersey Supreme Court ruled that a plaintiff who brought an action under the "Law Against Discrimination", P.L.1945, c. 169 (C. 10:5–1 et seq.) (LAD) was not entitled to jury trial. This bill would amend the LAD to grant a plaintiff the right to a jury trial. This bill would also add language to the findings section of the LAD listing the hardships (i.e. economic loss, emotional trauma) which victims of discrimination might suffer and language indicating that the LAD is to be liberally construed so that all common law remedies, including compensatory and punitive damages, are available to persons protected by the LAD.
>
> [Assembly Judiciary, Law and Public Safety Committee, *Statement for Assembly Bill Nos. 2872, 2118 and 2228.*]

That statement encapsulates the twin purposes of the 1990 amendments: (1) to overrule our holding in *Shaner* that LAD claimants

were not entitled to a jury trial for LAD causes of action; and (2) to reject our *dicta* in *Shaner* that monetary awards were a secondary, rather than co-equal, form of remedy under the LAD.

### B.

*N.J.S.A.* 10:5–13 ties the LAD remedies to those available in the common law, in that the section authorizes that "[a]ll remedies available in common-law tort actions shall be available to prevailing plaintiffs," which are "in addition to any provided by this act or any other statute." The common law of tort allows the recovery of nominal, compensatory, and punitive damages, *Restatement (Second) of Torts* §§ 903, 907, 908 (1979), including both pecuniary and nonpecuniary compensatory damages. *Id.* §§ 905–06. *N.J.S.A.* 10:5–13 expresses the legislative desire to allow claimants to recover those common law tort remedies—nominal damages, pecuniary and nonpecuniary compensatory damages, and punitive damages—under the LAD. There is no mention in *N.J.S.A.* 10:5–13, or elsewhere in the LAD, that the "common law tort actions" giving rise to such remedies should be altered.

The declarations section of the LAD, *N.J.S.A.* 10:5–3, does not support a contrary conclusion. The last paragraph of that section lists several types of harms, which may accompany discrimination, including "physical and emotional loss" and "severe emotional trauma." *Ibid.* It then states: *"Such harms* have, under the common law, given rise to legal remedies, including compensatory and punitive damages." *Ibid.* (emphasis added). The Appellate Division concluded that the phrase "emotional stress" in *N.J.S.A.* 10:5–3 evidenced a legislative intent to lower the standard for obtaining compensatory damages based on emotional distress, one purportedly endorsed by *Zahorian* and *Gray*. *Tarr, supra,* 360 *N.J.Super.* at 273–75, 822 *A.2d* 647. The panel surmised that the Legislature could not have intended through the 1990 amendments to heighten the standard, enunciated in *Zahorian* and *Gray*, for obtaining such damages. *Ibid.*

However, the term "emotional stress" in the declarations section was not listed in isolation. The term is part of a longer phrase, "physical and emotional stress," that is itself set off by semi-colons from other varieties of "harms" listed in *N.J.S.A.* 10:5–3. Not only does isolating "emotional stress" mischaracterize the legislative use of the term but it also makes no sense in the context of the paragraph as a whole. When it is isolated, the phrase "emotional stress" subsumes the later term "severe emotional trauma." *See N.J. Mfrs. Ins. Co. v. Hardy*, 178 *N.J.* 327, 336, 840 *A.*2d 231 (2004) (finding preferable interpretation "that ... gives meaning to all of the words employed in the statute"). Furthermore, "emotional stress" alone is not a "harm" that has "given rise to legal remedies" under our common law. "Emotional stress" affords common-law legal remedies only when coupled with "physical" stress, *Buckley, supra,* 111 *N.J.* at 367, 544 *A.*2d 857, or when "emotional stress" rises to the level of "severe emotional trauma." *Ibid.; accord Taylor, supra,* 152 *N.J.* at 514–15, 706 *A.*2d 685.

One must construe the phrase "emotional distress" out of context to conclude that the 1990 LAD amendments meant to apply a standard lower than the common law threshold for obtaining compensatory damages based on emotional distress caused by discrimination, which is none other than the *Taylor* standard. The majority's contrary conclusion appears to me to be at odds with a reasonable construction of the actual language of the Legislature and lacks support in the legislative history of the LAD.[5]

### C.

Furthermore, I must part company with my colleagues concerning the import of *Gray* and *Zahorian* in this matter.

---

[5] Declarations in a statutory preamble are not considered operative terms; however, they may act as an intrinsic aid to interpretation if a statute's operative terms are ambiguous. *Blackman v. Iles*, 4 *N.J.* 82, 91, 71 *A.*2d 633 (1950). Notably, here, the Court is urged by plaintiff to accord to *N.J.S.A.* 10:5–3 operative status. That it should not do.

In *Zahorian,* our affirmance of a Division Director's award of incidental monetary damages has no relevance to a claim for emotional-distress compensatory damages of the type available under the common law of tort, brought pursuant to *N.J.S.A.* 10:5–13, because *Zahorian* was not a common-law tort action, but a statutory action under the LAD. The monetary damages awarded in *Zahorian* were "incidental" to the broad equitable powers vested in the Director under the LAD. Such incidental monetary damages were available in this matter, but plaintiff never requested such relief. In respect of *Gray, supra,* even accepting that the cause of action there was considered to be the "tort" of violating "paragraphs 1 and 5 of Article I of New Jersey's Constitution," 110 *N.J.Super.* at 307, 265 *A.2d* 404, the court's remedy was nominal damages that reflect the violation of a constitutional right, but that did not compensate for an actual loss. *Id.* at 317–18, 265 *A.2d* 404; *see generally id.* at 315–16, 265 *A.2d* 404 (quoting *Spiegel v. Evergreen Cemetery Co.,* 117 *N.J.L.* 90, 96–97, 186 *A.* 585 (Sup.Ct.1936) (noting that "[i]t is the established rule of this state that . . . [f]or the invasion of a legal right, the law ordinarily infers that damage has ensued. And, in the absence of actual loss, the law vindicates the right by awarding nominal damages")).

Nominal damages, however, are not what plaintiff seeks here, and that is not what the majority seemingly now will allow. Plaintiff's claim is for compensatory damages and all additional relief that is predicated on such an award. An award of nominal damages, as opposed to compensatory damages, automatically forecloses the possibility of awarding punitive damages. *N.J.S.A.* 2A:15–5.13c. Holding that "compensatory" damages for emotional distress are now available under the LAD solely based on the violation of a constitutional or legal right, without any showing of severe emotional distress as by the common law required for an emotional distress claim, and as *Taylor, supra,* underscored, is antithetical to that important limitation in the Punitive Damages Act, *N.J.S.A.* 2A:15–5.9 to –5.17. As Justice Hall admonished, a legislative intent to revamp such "an important public policy matter . . . is so extremely doubtful that I am convinced the power

should be denied unless and until the Legislature bestows it in plain and unmistakable language." *Zahorian, supra,* 62 *N.J.* at 417, 301 *A.*2d 754 (Hall, J., dissenting).

## IV.

In my view, the Legislature did not intend to lower the threshold for recovering common-law remedies when such remedies are sought under the LAD, nor can that be reasonably inferred from the LAD. Therefore, in this matter I would require plaintiff to satisfy the modified four-prong test for obtaining compensatory damages for emotional distress that arises from discriminatory conduct, as set forth in *Taylor, supra,* 152 *N.J.* at 509–21, 706 *A.*2d 685.[6] Based on my review of the record, I would affirm the trial court's dismissal of plaintiff's claim for compensatory damages grounded on her alleged emotional distress because plaintiff did not make a *prima facie* showing under *Taylor.*

Specifically, in respect of the subjective severity of plaintiff's alleged emotional distress, the trial court correctly observed that the LAD does not require: (1) "a showing of medical treatment or medication in order to meet the emotional distress things," (2) "that emotional distress damages have to be proven by expert testimony, although that would be preferable," or (3) "that the plaintiff has to show that she sought treatment or anything for it," which is consistent with our observation in *Rendine, supra,* 141 *N.J.* at 313, 661 *A.*2d 1202, that a claim for emotional distress damages under the LAD does not require as a matter of law "expert testimony or independent corroboration." However, the trial court found plaintiff's "temporary upsetment" did not demonstrate "severe" emotional stress, as required under our common

---

[6] As previously stated, under that test, to recover compensatory damages for emotional distress, a plaintiff must demonstrate: (1) intentional conduct, *id.* at 513–14, 706 *A.*2d 685; (2) outrageous conduct, *id.* at 509–13, 706 *A.*2d 685; (3) proximate cause, *id.* at 515, 706 *A.*2d 685; (4)(a) subjectively severe emotional distress, *id.* at 514–15, 706 *A.*2d 685; and (4)(b) objectively severe emotional distress. *Id.* at 516–20, 706 *A.*2d 685.

law. The trial court noted correctly that "emotional distress standing alone with nothing else is generally not compensable," and that the alleged emotional distress

> has to be something more than just sort or a passing problem. And that's what happened in this case was that [plaintiff] made a passing reference to crying in the car and there was basically no testimony to indicate that that was related to the incident in question or to other problems or that it was *substantial*, that it was *significant* or that it caused her any continuing emotional distress.
> (Emphasis added.)

Plaintiff's proofs differ substantially with those offered by the plaintiff in *Taylor*. There, the plaintiff's supervisor, who was a white male, referred to the plaintiff, who was an African–American female, as a "jungle bunny" in the presence of others, eliciting laughter from one listener. *Taylor, supra,* 152 *N.J.* at 495, 706 *A.2d* 685. The plaintiff immediately began to cry and went to the bathroom. When discussing the remark with co-workers soon thereafter, all of whom were white and male, she was mocked. *Id.* at 495–96, 706 *A.2d* 685. After bringing the incident to light, the plaintiff's co-workers "acted coolly toward her and were afraid to talk to her." *Id.* at 497, 706 *A.2d* 685. The plaintiff consulted a psychiatrist periodically for almost a year; she was a "nervous wreck"; "[s]he was afraid to leave work alone and lived in constant fear of reprisal"; and "bought a bullet-proof vest." *Ibid.* The plaintiff suffered from insomnia, mood changes, and other symptoms indicative of "post-traumatic stress disorder," as diagnosed by her psychiatrist. *Ibid.*[7]

---

[7] Although the plaintiff in *Taylor, supra,* adduced evidence that she consulted a psychiatrist, and that the psychiatrist diagnosed her with post-traumatic stress disorder, the Court did not hold that such expert evidence was a prerequisite to a claim for intentional infliction of emotional distress based on discrimination as a matter of law. 152 *N.J.* at 514–15, 706 *A.2d* 685. Rather, such evidence, as a matter of fact, might bolster the conclusion that a plaintiff suffered "severe" emotional distress. The Court's explicit observation of the same in *Rendine, supra,* 141 *N.J.* at 313, 661 *A.2d* 1202, is wholly compatible with *Taylor.* I note in addition that the majority of federal Courts of Appeal addressing claims of compensatory damages for emotional distress in the context of 42 *U.S.C.A.* §§ 1981 and 1983, as well as 42 *U.S.C.A.* § 2000e (Title VII), have held that a plaintiff is not barred *as a matter of law* from recovering compensatory damages

In the matter before us, although a co-worker testified about how she believed the discrimination had affected plaintiff, plaintiff herself introduced no other evidence of her emotional distress, except her own testimony. Plaintiff made the tactical decision not to offer evidence that she visited psychiatrists, psychologists, and/or social workers in and around the time of the discriminatory conduct giving rise to this lawsuit, possibly because some or all of those visits related to marital difficulties she was experiencing around the same time. Plaintiff also apparently testified at her deposition about headaches, high blood pressure, and an appetite change, all potentially related to the discriminatory conduct, but perhaps relating to the difficulties associated with her marriage, or perhaps other undisclosed factors. Plaintiff's trial strategy instead appears to have been to limit the evidence of her emotional distress to her feeling "bothered," and to crying while driving home on one occasion. Unlike at her deposition, plaintiff did not testify at trial about her headaches, high blood pressure, or loss of appetite. Plaintiff did not testify that she sought medical, psychological, or social worker treatment. In my view, the evidence presented by plaintiff fails to establish a *prima facie* case of subjective emotional distress under *Taylor*.

## V.

In conclusion, I would affirm the trial court's dismissal of plaintiff's claim for compensatory damages based on emotional distress. That said, I join in the Court's reversal of the Appellate Division judgment that had imposed individual liability on defen-

---

for emotional distress without expert testimony or corroborative evidence, and that the absence of corroboration goes to the weight of the evidence demonstrating emotional distress. *See, e.g., Patrolmen's Benevolent Ass'n of City of New York v. City of New York,* 310 *F.*3d 43, 55 (2d Cir.2002); *Gunby v. Pa. Elec. Co.,* 840 *F.*2d 1108, 1121–22 (3d Cir.1988), *cited with approval in Alexander v. Riga,* 208 *F.*3d 419, 428 n. 6 (3d Cir.1999); *Knussman v. Maryland,* 272 *F.*3d 625, 640 (4th Cir.2001); *Thomas v. Texas Dep't Criminal Justice,* 297 *F.*3d 361, 368–69 (5th Cir.2002); *Turic v. Holland Hospitality, Inc.* 85 *F.*3d 1211, 1215 (6th Cir.1996); *Forshee v. Waterloo Indus., Inc.,* 178 *F.*3d 527, 531 (8th Cir.1999).

dant Bob Ciasulli. I also concur in the Court's conclusion that, to recover attorney's fees as a prevailing party under the LAD, our courts should employ the same standard as that used for such claims under 42 *U.S.C.A.* § 1988. *See ante* at 84–86, 853 *A.*2d at 929–30 (quoting *Farrar v. Hobby,* 506 *U.S.* 103, 113 *S.Ct.* 566, 121 *L.Ed.*2d 494 (1992)).

Justice VERNIERO joins in this opinion.

*For affirmance in part/reversal in part/remandment*—Chief Justice PORITZ and Justices ZAZZALI, ALBIN and WALLACE—4.

*For concurrence in part/dissent in part*—Justices VERNIERO and LaVECCHIA—2.