

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-23-2006

# Salvino Steel Iron v. Safeco Ins Co Amer

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-1449

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Salvino Steel Iron v. Safeco Ins Co Amer" (2006). *2006 Decisions.* Paper 1061.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1061

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 05-1449

_____

THE UNITED STATES OF AMERICA FOR THE USE AND
BENEFIT OF SALVINO STEEL & IRON WORKS, INC.

v.

SAFECO INSURANCE COMPANY OF AMERICA;
STRUCTURAL CONCEPTS, INC.

Structural Concepts, Inc.,

Appellant

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 02-cv-00817)
District Judge: Honorable Joseph E. Irenas

_____

Submitted Under Third Circuit LAR 34.1(a)
May 9, 2006

Before:  BARRY, SMITH and ALDISERT, Circuit Judges.

(Filed May 23, 2006)

_____

OPINION OF THE COURT

_____

ALDISERT, Circuit Judge.

1

The United States District Court for the District of New Jersey held Appellant Structural Concepts, Inc. ("SCI") in contempt for failure to comply with an order enforcing an arbitration award against SCI. On appeal, SCI disputes both the finding of contempt and the legality of the contempt decree issued against it. We have jurisdiction to hear this appeal pursuant to 28 U.S.C. § 1291. We will vacate and reverse.

I.

The parties are familiar with the facts and proceedings in the District Court, so we will only briefly revisit them here. The present action arose from a payment dispute between SCI and Salvino Steel & Iron Works, Inc. SCI had hired Salvino to provide steel and steel erection services for construction of a golf clubhouse for the U.S. Army Corps of Engineers at McGuire Air Force Base. The parties entered into the contract in 2000, and Salvino performed its work in 2000 and 2001.

On February 26, 2002, Salvino filed a complaint alleging breach of contract and bond claims pursuant to the Miller Act, 40 U.S.C. § 270, against SCI and surety Safeco Insurance Company of America in the United States District Court for the District of New Jersey.[1] On May 9, 2003, the parties agreed to binding arbitration of their dispute. An arbitration award was later issued on June 22, 2004, in favor of Salvino.

The arbitration award had two different requirements. First, it ordered SCI to pay

---

[1] Safeco is a party to this suit because in June 2000, SCI had obtained from Safeco a payment bond pertaining to the golf clubhouse construction for the protection of SCI's subcontractors, which included Salvino.

Salvino $63,597.61 within 30 days of the award's issuance date. Second, it mandated that SCI submit four specific monetary claims to the U.S. Army Corps of Engineers. Pursuant to that directive, any recovery made on the claims mentioned in paragraphs 2A, 2C and 2D of the award (hereinafter referred to as claims "2A", "2C" and "2D") would be the property of Salvino, and any recovery upon the claim mentioned in paragraph 2B (hereinafter referred to as claim "2B") would be the property of SCI. The submission of these claims was to occur within 30 days of the issuance of the arbitration award. The award, however, provided an exception to this 30-day time requirement, stating that: "if [SCI] is actively negotiating a settlement with the U.S. Army Corps of Engineers, the claims . . . may be incorporated in those negotiations, provided that such claims can be identified (for payment purposes) in any final settlement."

On September 8, 2004, the District Court issued an order (the "September 8 order") entering and confirming the arbitration award. Aside from ordering SCI to pay Salvino $63,597.61, the Court also awarded attorney's fees to Salvino for the costs of bringing the motion for confirmation of the arbitration award. On October 12, 2004, the Court amended the September 8 order to include those attorney's fees, which totaled $2,047.65, bringing the full amount owed by SCI to $65,645.26.

On October 27, 2004, Salvino filed a petition for contempt against SCI. Therein, Salvino alleged that (1) SCI "has failed to make any payment in compliance with the Order issuing a monetary judgment against them," and (2) SCI "has also failed to submit

3

the claims ordered by the arbitrator and confirmed [by the District Court]." (Petition for Contempt, app. at 59a-60a.) In support of the latter allegation, Salvino stated that it had been in contact with the District Counsel for the Department of the Army and the counsel for the U.S. Army Corps of Engineers and that it had not received confirmation from either party that SCI had submitted the required monetary claims. Finally, Salvino requested an award of reasonable attorney's fees pursuant to N.J. Stat. Ann. § 2A:23B-25 to compensate it for the cost of bringing the petition.

On November 12, 2004, the District Court acknowledged receipt of this petition and gave SCI until November 19, 2004 to file a response. It indicated that if no response was received by that date, "the Court will assume that there is no opposition." The Court also stated that if no response was received by November 19, "Plaintiff [Salvino] is directed to submit by November 24, 2004, an affidavit setting forth the monetary amount [SCI] would recover from the U.S. Army Corps of Engineers were it to pursue the four claims described in the Arbitrator's Award, dated June 22, 2004, and in this Court's Order Confirming the Arbitration Award and Entering Judgment, dated September 8, 2004."

SCI let the November 19, 2004 deadline pass without filing a response.[2] On November 23, 2004, however, it submitted an affidavit from its president, George Moutis,

---

[2] Sometime around this date, in a check dated November 3, 2004, SCI paid Salvino the $65,645.26 owed pursuant to the October 12, 2004 order.

4

in which Moutis outlined the status of claims 2A-2D. As for claim 2A, he indicated that SCI had forwarded that claim to the U.S. Army Corps of Engineers and that negotiations with the Corps on this claim had not concluded. As for claim 2B, he indicated that SCI had settled this claim. As for claim 2C, he indicated that SCI had already submitted this claim, but that the Corps rejected it. He further stated that SCI had retained counsel to prosecute this claim before the U.S. Court of Claims. Finally, as for claim 2D, he indicated that "Salvino's lawsuit did not include such a claim, [but that SCI] is still in negotiations with the U.S. Corps of Engineers regarding this claim."

On December 10, 2004, the District Court entered an order granting Salvino's petition for contempt. Although it noted that SCI's affidavit response was not timely made by the November 19, 2004 deadline, the District Court nonetheless considered and rejected the contentions made in the affidavit. In addressing SCI's response regarding claim 2A, the Court held that it was "vague" and "tells the court very little about the status of the claim and SCI's efforts in pursuing it." (December 10, 2004 order, app. at 16a-17a.) It similarly described SCI's depiction of the status of claim 2D as being "a vague reference to ongoing negotiations with the U.S. Corps of Engineers" and that SCI provided "no real information regarding its efforts to pursue this claim." (Id. at 17a.) Consequently, the Court found SCI to be in contempt of the Court's September 8 order.[3]

_____

[3] The Court did accept SCI's response that claim 2B had been settled and thus assessed no penalty for that claim, because under the arbitration award any recovery under this claim was the property of SCI. Likewise, the Court also accepted SCI's

5

The Court also awarded a monetary judgment of $15,600 to cover the amount of potential recovery for claims 2A and 2D and attorney's fees, with the amount to be determined later, as compensation to Salvino for its costs of bringing the petition for contempt.

On January 7, 2005, the Court entered an order amending the monetary judgment of $15,600 to include $1,182 in attorney's fees. In this order, the Court also rejected SCI's motion for reconsideration, stating that SCI has "not alleged any new facts or decisions of law that were previously 'overlooked' and that 'might reasonably have resulted in a different conclusion.'" This appeal followed.

## II.

"The imposition of contempt is reviewed under an abuse of discretion standard and will only be disturbed if there is an error of law or a clearly erroneous finding of fact." Harris v. City of Philadelphia, 47 F.3d 1342, 1349 (3d Cir. 1995) (citations omitted). We review questions of law de novo. Id. We also decide on a plenary basis whether the terms of the arbitration award are ambiguous, construing all perceived ambiguities in favor of the party charged with contempt. Id. at 1350. "In other words, a contempt citation should not be granted if there is ground to doubt the wrongfulness of the defendant's conduct." Id. (citations and quotations omitted).

"To prove civil contempt the court must find that (1) a valid court order existed,

representation that claim 2C had been rejected by the Corps, and accordingly assessed no penalty based on that claim.

6

(2) the defendant had knowledge of the order, and (3) the defendant disobeyed the order." John T. ex rel. Paul T. v. Delaware County Intermediate Unit, 318 F.3d 545, 552 (3d Cir. 2003) (citations and quotations omitted). These "elements must be proven by clear and convincing evidence, and ambiguities must be resolved in favor of the party charged with contempt." Id. (citations and quotations omitted). Here, because the first two contempt elements incontrovertibly exist, only the third is at issue, whether SCI disobeyed a court order.

III.

SCI contends that the District Court exceeded the permissible bounds of its discretion in granting the contempt decree because Salvino failed to prove by clear and convincing evidence that SCI violated the Court's September 8 order. It argues that the Court erred by disregarding SCI's contention that it was currently in negotiations with the U.S. Army Corps of Engineers over claims 2A and 2D, and asserts that these ongoing negotiations meant that SCI was in compliance with the terms of the arbitration award. It also challenges the contempt decree by arguing that the decree's monetary judgment constitutes an arbitrary and punitive criminal sanction. The imposition of this sanction, it then contends, violated SCI's due process rights because SCI was not afforded the correct procedural safeguards necessary for a finding of criminal contempt.

Upon examining the record, we conclude that the Court exceeded the permissible bounds of its discretion when it held SCI in contempt for failure to submit claims 2A and

7

2D to the U.S. Army Corps of Engineers.[4]  Under the terms of the arbitration award, SCI

was required to submit claims 2A and 2D within 30 days of the date of that award.  That

time period, however, could be tolled should SCI enter into negotiations that included

those claims.  Salvino's petition for contempt focused solely on SCI's failure to submit

the claims, and that was the basis for the Court's finding of contempt.[5]  In its November

23, 2004 affidavit, however, SCI asserted that it was in negotiations over these claims,

and Salvino never disputed that such negotiations were ongoing.[6]

---

[4] Notwithstanding Salvino's other allegation in its petition for contempt that SCI had not yet paid the monetary judgment portion of the Arbitration Award, we conclude that this contention formed no part of the Court's December 10, 2004 contempt decree. First, although the amount had not been paid at the time of the petition, it had been paid prior to the December 10, 2004 entry date of the contempt decree.  Second, the Court makes no mention of this nonpayment in its discussion of Salvino's petition, stating only that the issue of the nonsubmission of the claims "is the main subject of the Plaintiff's petition."  Finally, the Court failed to specify any relief in its order regarding the delinquent payment of the arbitration award's monetary judgment.  The contempt decree thus solely concerned the nonsubmission of the claims.

[5] Salvino relies upon an August 25, 2004 letter from the District Counsel for the Department of the Army and an October 25, 2004 conversation with the counsel for the Corps of Engineers for the proposition that SCI had not submitted the claims.  The District Counsel stated that the Department of the Army had received no claims from SCI corresponding to those in the arbitration award, and the counsel for the Corps similarly confirmed a nonsubmission.  Neither counsel, however, makes mention as to whether SCI was in negotiations over these claims with the U.S. Army Corps of Engineers as asserted in SCI's affidavit reply.

[6] Even though in its November 12, 2004 letter to the parties the Court had indicated that it would assume the facts in Salvino's petition to be true if a timely response were not filed by SCI, the Court's ensuing consideration of SCI's affidavit, which it acknowledged was filed late, necessitates that we consider it in our abuse of discretion analysis.

8

In holding SCI in contempt, the District Court acknowledged that SCI had stated that it was in negotiations over these claims, but nevertheless discounted these responses as being vague and inadequate. We do not agree that SCI's uncontroverted statements that it was in negotiations should have been so quickly dismissed. A contempt decree should only be entered upon a showing of clear and convincing evidence of a violation of a valid court order, John T. ex rel. Paul T., 318 F.3d at 552, and here there was no evidence demonstrating SCI to be in noncompliance with this portion of the September 8 order. The statements in SCI's affidavit that it was in negotiations with the U.S. Army Corps of Engineers may have been "vague," but Salvino provided no evidence that those statements were false. In fact, in its petition for contempt, Salvino never addressed whether negotiations were ongoing.

As we stated in Harris, "a contempt decree should not be granted if there is a ground to doubt the wrongfulness of the defendant's conduct." Harris, 47 F.3d at 1350 (citations and quotations omitted). Here, where SCI has stated that it is in negotiations, and Salvino has said nothing to the contrary, there is just such a ground to doubt whether SCI was in contempt of the District Court's order regarding the actions to be taken on claims 2A and 2D. What is more, inasmuch as the arbitration award clause allowing negotiations is ambiguous (i.e., by failing to indicate either the differences between submission and negotiation, or the required substance and procedure of these negotiations), the District Court erred by not construing those ambiguities in favor of SCI.

9

See id. ( "The resolution of ambiguities ought to favor the party charged with contempt."). Accordingly, it was beyond the permissible scope of the Court's discretion for it to have found SCI in contempt for failure to take action upon claims 2A and 2D. For this same reason, the Court's resulting monetary award of $15,600, granted to Salvino as the potential value of these two claims, must also be vacated.[7]

Finally, because we are reversing the District Court's grant of Salvino's petition for contempt, Salvino is no longer the prevailing party and as such we must vacate the Court's award of attorney's fees to Salvino to cover its costs of bringing that petition. See N.J. Stat. Ann. § 2A:23B-25(b) (stating that a court may award attorney's fees to a "prevailing party" to compensate the party for its costs of enforcing the court's entry of an arbitration award in subsequent judicial proceedings); Tarr v. Ciasulli, 853 A.2d 921, 930 (N.J. 2004) (citations and quotations omitted) ("We have cited with approval the federal view that a prevailing party is one who succeeds on any significant issue in litigation [that] achieves some of the benefit the parties sought in bringing suit."); Buckhannon Bd. and Care Home, Inc. v. West Virginia, 532 U.S. 598, 603 (2001) (stating that the term "prevailing party" in a fee-shifting statute is a legal term of art meaning "one who has been awarded some relief by the court ").

---

[7] Because we conclude that it was error for the Court to hold SCI in contempt for failure to submit claims 2A and 2D, we do not need to address whether its monetary judgment of $15,600 for those claims and its award to Salvino of attorney's fees for Salvino's costs of bringing the petition for contempt were criminal contempt sanctions or an abuse of SCI's due process rights.

10

IV.

We have considered all contentions raised by the parties and conclude that no further discussion is necessary. We will reverse the District Court's contempt decree holding SCI in contempt and awarding a monetary judgment to Salvino for SCI's purported failure to submit claims 2A and 2D of the arbitration award to the U.S. Army Corps of Engineers. We will also vacate the Court's award of attorney's fees to Salvino to cover Salvino's costs of bringing the petition.

_____