**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2397-22

JEANNETTE ANDREULA,

 Plaintiff-Appellant,

v.

THE BOARD OF EDUCATION
OF THE TOWNSHIP OF NUTLEY,
DR. JULIE GLAZER, LORRAINE
RESTEL, JANINE SARNO,
CHARLES KUCINSKI, and LISA
DANCHECK MARTIN,

 Defendants-Respondents.

_____

Argued November 19, 2024 – Decided December 26, 2024

Before Judges Gooden Brown and Chase.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. L-6740-21.

Anthony M. Rainone argued the cause for appellant (Brach Eichler, LLC, attorneys; Anthony M. Rainone, of counsel and on the brief; Lauren A. Woods, Jr., on the briefs).

Richard A. Grodeck argued the cause for respondents Nutley Board of Education and Lorraine Restel (Piro Zinna Cifelli Paris & Genitempo, LLC, attorneys; Richard A. Grodeck, of counsel; Kristen Jones, on the brief).

Michele L. De Luca argued the cause for respondents Dr. Julie Glazer and Janine Sarno (Chasen Lamparello Mallon & Cappuzzo, PC, attorneys; Philip W. Lamparello, of counsel and on the brief; Michele L. De Luca, on the brief).

Kenneth B. Goodman argued the cause for respondents Charles Kucinski and Lisa Dancheck Martin (O'Toole Scrivo, LLC, attorneys; Robert J. Gallop and Kenneth B. Goodman, on the brief).

PER CURIAM

Plaintiff Jeannette Andreula appeals the February 28, 2023 order dismissing her complaint for failure to state a claim upon which relief can be granted, R. 4:6-2(e). Plaintiff had alleged liability for retaliation under the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. 10:5-1 to -50, against defendants the Board of Education of the Township of Nutley ("Board"), and individual liability for aiding and abetting the Board's alleged retaliatory action under the NJLAD against Superintendent Doctor Julie Glazer, Principal Lorraine Restel, Teacher Janine Sarno, and Board Members Charles Kucinski and Lisa Dancheck Martin. We affirm in part, and we reverse in part and remand for further proceedings.

I.

Plaintiff has taught as an early elementary education teacher for the Nutley School District for over thirty years. She has served in leadership teaching positions, received positive reviews, and was twice honored as the Teacher of the Year by the Board. In 2016 plaintiff filed a lawsuit ("Andreula I"), against defendants alleging retaliation for serving as a witness in an investigation arising from a complaint made by another teacher against Principal Restel. Two months after her interview, plaintiff was involuntarily transferred to the Radcliffe School to teach fifth grade, which was a grade she had never taught. In Andreula I, the trial court issued a preliminary injunction preventing plaintiff's transfer to another school.

In September 2021, plaintiff filed this matter in a ten-count complaint ("Andreula II"). According to plaintiff, because she filed Andreula I, she had been subjected to a pattern of retaliatory activities. Specifically, plaintiff claimed disparate treatment from Principal Restel for no longer replying to her emails and refusing to supply her with her students' standardized test scores, while purportedly providing the same to other teachers. She also alleged, after the end of the remote learning period necessitated by the COVID-19 pandemic, Principal Restel did not stop by her classroom to welcome students back to the

3

school or introduce herself to a new student. Also, with the return to in-person instruction, plaintiff asserted Principal Restel continued to ignore her, such that plaintiff mistakenly took her students outdoors for their mask break. Moreover, she alleged Principal Restel has "consistently rotated [plaintiff's] grade-level [teaching] partners," a practice which is purportedly "atypical and outside of the norm."

Plaintiff further alleged she was subjected to disparate treatment with respect to the application of District Policy 1648, which purportedly required all students and teachers to wear a mask unless outside the building, during snack time, or for other accommodations on a limited basis. After the school administration received a complaint that plaintiff was not wearing her mask while teaching, plaintiff claimed she was subjected to a meeting with Restel and Superintendent Dr. Glazer, without the involvement of union representatives. As a result of that meeting, plaintiff alleged a formal discipline letter was placed in her personnel file, as opposed to the private conversation Principal Restel had with another teacher in response to a similar complaint.

Finally, plaintiff alleged she learned defendant Sarno had brought a complaint about her in March 2021, and a third-party investigator was investigating the complaint for the Board. She alleges the investigator

conducted the investigation based on Sarno's allegations. Because plaintiff was not provided an opportunity to review Sarno's complaint prior to the interview and one of the claims related to the 2016 lawsuit, she allegedly could not adequately respond during her investigative interview. Plaintiff claims the "Board of Nutley's method of conducting the investigation, through authorization of [defendants] Kucinski and Dancheck Martin, constituted a retaliatory action, given that it was a 'sham investigation' conducted in a way that deprived [plaintiff] of her right to meaningfully participate or even to know the results."

All defendants then moved to dismiss plaintiff's complaint pursuant to Rule 4:6-2(e). Defendants Kucinski, Dancheck Martin, Glazer, and Sarno also moved to dismiss plaintiff's complaint, or at least strike it in part, pursuant to Rule 4:6-4(b), claiming that some allegations were spurious. After defendants moved to dismiss, without leave of court or consent of the parties, plaintiff filed an amended complaint in the current matter, omitting Counts Two and Ten from her initial complaint and alleging:

> Count One against the Board of Education of Nutley:
> Retaliation Under NJLAD.
>
> Count Three against Dr. Glazer: Individual Liability
> Under NJLAD.

5

> Count Four against Principal Restel: Individual Liability Under NJLAD.
>
> Count Five against Sarno: Individual Liability Under NJLAD.
>
> Count Six against Kucinski: Individual Liability Under NJLAD.
>
> Count Seven against Dancheck Martin: Individual Liability Under NJLAD.
>
> Count Eight against the Board of Education of Nutley: Violation of OPRA.
>
> Count Nine against the Board of Education of Nutley: Violation of Common-Law Right of Access.

In response, defendants advised the motion court "that they would not be responding to the amended complaint[] and that the amended complaint contained the same deficiencies that were the subject of the pending motions to dismiss."

After hearing oral argument, by four orders dated February 28, 2023, with an attached statement of reasons, the motion court agreed with defendants and dismissed plaintiff's amended complaint against the Board finding no adverse employment action or causal connection to Andreula I. Although the motion court denied the individual motions to dismiss as spurious, it dismissed the individual claims under a theory of aiding and abetting and because of qualified

6

immunity. All orders, except the one issued as to Kucinski and Dancheck Martin, dismissed plaintiff's complaint with prejudice.[1]

On appeal, plaintiff contends the court erred by (1) finding she did not establish a prima facie claim of retaliation under the NJLAD; (2) finding the doctrine of qualified immunity applies to claims brought against some individual defendants under the NJLAD; and (3) finding plaintiff failed to allege sufficient facts to show individual defendants were aiders and abettors under the NJLAD.

II.

"A decision granting or denying a motion to dismiss for failure to state a claim pursuant to Rule 4:6-2(e) is reviewed de novo, affording no deference to the trial judge's legal conclusions." Maia v. IEW Constr. Grp., 257 N.J. 330, 341 (2024). "The plaintiff is entitled to the benefit of every reasonable inference as we 'search[] the complaint in depth and with liberality to ascertain whether the fundament of a cause of action may be gleaned even from an obscure

---

[1] The court's order granting dismissal of plaintiff's claims against Kucinski and Dancheck Martin failed to state with prejudice. We note the parties did not raise the issue on appeal, and a dismissal without prejudice may operate as a final judgment. See Pressler & Verniero, Current N.J. Court Rules, cmt. 4.1.1 on R. 4:6-2 (2024) ("Ordinarily a dismissal for failure to state a claim is without prejudice."); Morris Cnty. v. 8 Ct. St. Ltd., 223 N.J. Super. 35, 39 (App. Div. 1988) (holding that a dismissal without prejudice may operate as a final judgment); R. 2:2-3(b)(12).

statement of claim, opportunity being given to amend if necessary.'" Pace v. Hamilton Cove, 258 N.J. 82, 96 (2024) (omission in original) (quoting Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989)). "When deciding a motion to dismiss under Rule 4:6-2(e), the test to determine 'the adequacy of a pleading' is 'whether a cause of action is "suggested" by the facts.'" Doe v. Estate of C.V.O., 477 N.J. Super. 42, 54 (App. Div. 2023), certif. denied, 257 N.J. 232, 257 N.J. 242, and 257 N.J. 259 (2024) (quoting MasTec Renewables Constr. Co. v. SunLight Gen. Mercer Solar, LLC, 462 N.J. Super. 297, 309 (App. Div. 2020)).

"'[I]f the complaint states no claim that supports relief, and discovery will not give rise to such a claim, the action should be dismissed.'" Baskin v. P.C. Richard & Son, LLC, 246 N.J. 157, 171 (2021) (quoting Dimitrakopoulos, 237 N.J. at 107). A motion to dismiss under Rule 4:6-2(e) is limited to "'the pleadings themselves.'" Dimitrakopoulos, 237 N.J. at 107 (quoting Roa v. Roa, 200 N.J. 555, 562 (2010)).

A motion to dismiss for failure to state a claim should be granted "only in rare instances." Seidenberg v. Summit Bank, 348 N.J. Super. 243, 250 (App. Div. 2002). The court applies an indulgent standard. If a "generous reading" of plaintiff's complaint "merely suggests a cause of action," the complaint should

"withstand the motion." F.G. v. MacDonell, 150 N.J. 550, 556 (1997) (citing Printing Mart-Morristown, 116 N.J. at 746). In considering a motion to dismiss for failure to state a claim, a court's "review 'is limited to examining the legal sufficiency of the facts alleged on the face of the complaint,' and . . . [does] not consider plaintiffs' ability to prove their allegations." Petro v. Platkin, 472 N.J. Super. 536, 562 (App. Div. 2022) (quoting Wreden v. Twp. of Lafayette, 436 N.J. Super. 117, 124-25 (App. Div. 2014)). In applying this test, a court treats the plaintiff's version of the facts as set forth in the complaint as uncontradicted and accords it all legitimate inferences. Banco Popular N. Am. v. Gandi, 184 N.J. 161, 166 (2005). "Nonetheless, 'the essential facts supporting plaintiff's cause of action must be presented in order for the claim to survive; conclusory allegations are insufficient in that regard.'" AC Ocean Walk, LLC v. Am. Guarantee & Liab. Ins. Co., 256 N.J. 294, 311 (2024) (quoting Scheidt v. DRS Techs., Inc., 424 N.J. Super. 188, 193 (App. Div. 2012)).

III.

Count One Against The Board

Plaintiff first contends the motion court erred when it determined she failed to allege she was subjected to an adverse employment action and there was no causal connection to Andreula I.

9

The NJLAD was enacted to "eradicate[e] [] 'the cancer of discrimination'" in the workplace, Quinlan v. Curtiss-Wright Corp., 204 N.J. 239, 258 (2010) (quoting Fuchilla v. Layman, 109 N.J. 319, 334 (1988)), and is "intended to be given a broad and liberal interpretation" to effect its "overarching purpose . . . ." Id. at 259. It prohibits unlawful employment practices and discrimination "based on race, religion, sex, or other protected status." Cutler v. Dorn, 196 N.J. 419, 430 (2008); see also N.J.S.A. 10:5-12(a). In interpreting the NJLAD, our Supreme Court has striven to carefully "strike the [appropriate] balance between the employer's legitimate right to conduct its business . . . and the employee's right to be free from discrimination or retaliation." Id. at 261.

To prove a prima facie case of retaliation under the NJLAD, a plaintiff must demonstrate "that the employee 'engaged in a protected activity known to the [employer,]' the employee was 'subjected to an adverse employment decision[,]' and there is a causal link between the protected activity and the adverse employment action." Battaglia v. United Parcel Serv., Inc., 214 N.J. 518, 547 (2013) (alterations in original) (quoting Woods-Pirozzi v. Nabisco Foods, 290 N.J. Super 252, 274 (App. Div. 1996)). The NJLAD prohibits an employer from taking reprisals against an employee because the employee has opposed any practices or acts under the NJLAD, or because the employee filed

10

a complaint, testified, or assisted in any proceeding under the NJLAD. N.J.S.A. 10:5-12(d). However, the NJLAD does not define "adverse employment action" and there is no bright-line rule in determining what constitutes an adverse employment action. Mancini v. Twp. of Teaneck, 349 N.J. Super. 527, 564 (App. Div. 2002).

There is no dispute that filing a lawsuit alleging discrimination is a protected activity within the meaning of the first factor of the NJLAD. The motion court properly made that determination, and all parties concur.

Our Supreme Court, in Roa v. Roa, considered adverse employment actions under the second element and "how harmful an act of retaliatory discrimination must be" to be actionable under the NJLAD. 200 N.J. at 575. The Court adopted the United States Supreme Court's Title VII retaliation standard established in Burlington Northern & Santa Fe Railway Company v. White, 548 U.S. 53, 68 (2006). Roa, 200 N.J. at 575. Our Court elucidated the test regarding the sufficiency of the employer's adverse action is whether "a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Ibid. (quoting Burlington, 548 U.S. at 68) (internal quotation marks omitted). The Roa Court

also acknowledged that the retaliation statutes do not protect plaintiffs from "those petty slights or minor annoyances that often take place at work and that all employees experience." Ibid. (quoting Burlington, 548 U.S. at 68).

Regarding the second element, an adverse employment action, the motion court held, "as to [the Board], the complaint fails to specify what acts or series of acts were actually retaliatory." The motion court then determined plaintiff "cannot show that her wages or benefits were affected. Nor can she show that a significant, non-temporary adverse change in her employment status or terms of her employment were affected." Finally, the motion court stated, plaintiff "has failed to show how any of the above acts have even a remote relationship to the filing of [Andreula I]."

Regarding the second element necessary to state a claim for retaliation, plaintiff contends she has sufficiently alleged adverse employment actions. She posits that, while each discrete act alone may be insufficient, she has established multiple adverse acts that constitute a course of retaliatory conduct supporting her retaliation claim. We agree.

Our jurisprudence has accepted that retaliation claims in employment settings may be based on a pattern of retaliatory behavior, and not just on discrete actions. "Our Supreme Court has stated in dictum that retaliation . . .

'need not be a single discrete action.'" Beasley v. Passaic Cnty., 377 N.J. Super. 585, 608 (App. Div. 2005) (quoting Green v. Jersey City Bd. of Educ., 177 N.J. 434, 448 (2003)); see also Nardello v. Twp. of Voorhees, 377 N.J. Super. 428, 435 (App. Div. 2005) ("[W]hile plaintiff was not discharged, suspended[,] or demoted, when the facts are viewed in a light most favorable to him, a jury could draw an inference that he suffered a series of adverse retaliatory actions by his employer."). According to the Court, an "'adverse employment action taken against an employee in the terms and conditions of employment' can include . . . many separate but relatively minor instances of behavior directed against an employee that may not be actionable individually but that combine to make up a pattern of retaliatory conduct." Green, 177 N.J. at 448 (internal citations omitted). Moreover, "employer actions that fall short of [discharge, suspension, demotion, or transfer] may nonetheless be the equivalent of an adverse action." Cokus v. Bristol Myers Squib Co., 362 N.J. Super. 366, 378 (Law Div. 2002), aff'd, 362 N.J. Super. 245 (App. Div. 2003).

When reviewing the complaint thoroughly and with liberality to see if a cause of action was stated, it is evident plaintiff clearly and repeatedly stated her allegations of retaliation were based on "a pattern of retaliatory actions" and not on discrete occurrences of materially adverse employment actions. The

13

motion court erred by addressing defendant's allegations as discrete acts instead of as parts of a pattern of retaliatory activity, and acknowledging defendant's "presumed legitimate, non[retaliatory] reason" for the alleged actions at the motion to dismiss stage rather than at the summary judgment stage.

This is especially true later in the statement of reasons, however, when on the same facts, the motion court contradicted its initial determination by opining:

> Whether the districts' [sic] application of the Covid-19 policy, the continued rotation of Plaintiff's grade-level partners[,] and the involuntary reassignment constitute a pattern of retaliation following the filing of the [Andreula I] remains unclear.
>
> When affording all reasonable inferences to [plaintiff] that the complained of activity constitutes a pattern of retaliation, [plaintiff] may have established the second element of her prima facie case.

This internal contradiction of the motion court's reasoning demonstrates that plaintiff's complaint, at the very least, suggests an adverse employment action and should not have been dismissed for "failing to establish" this element.

Contrary to the motion court's analysis, plaintiff did not assert that "being reprimanded" was a materially adverse employment action, nor did plaintiff assert "enforcing the mask policy [was] not itself within the purview of the [Board]." Instead, plaintiff clearly claimed, "[t]o her knowledge, [she] is the only teacher who has been singled out with a disciplinary meeting and letter in

14

her file," and that "this disparate treatment occurred as retaliation for [her] filing of the pending [Andreula I]."

Moreover, regarding the investigation of plaintiff based on defendant Sarno bringing a complaint about her, the motion court then stated, though, "as to [the Board], the complaint fails to specify what acts or series of acts were actually retaliatory." Here, the "aggrieved[-]of conduct" must be examined in context, though. See El-Sioufi v. St. Peter's Univ. Hosp., 382 N.J. Super. 145, 177 (App. Div. 2005). Plaintiff's claim arose in the context of a continuing course of an employer's treatment of an employee, who is engaged in litigation with that same employer and whose employment is circumscribed by an injunction. Despite the motion court's finding, plaintiff did not claim the investigation was itself an example of retaliation. Instead, plaintiff claimed the investigation was conducted as a sham, in a harassing manner, as retaliation.

Additionally, we part way with the court's conclusion that plaintiff "failed to show how any of the [alleged] acts have even a remote relationship to the filing of [Andreula I]." In so concluding, however, the court failed to accept as true plaintiff's facts from her complaint alleging exactly that:

> 52. As for the third prima facie element, there is a causal connection between the timing of these retaliatory activities and the First Lawsuit, such that it is more likely than not that these activities resulted

15

from the filing of her First Lawsuit. Indeed, these activities began after [p]laintiff filed her First Lawsuit, and have continued throughout the pendency of the First Lawsuit. For example, since the filing of the First Lawsuit, Principal Restel stopped and/or refused to reply to [p]laintiff's e-mails, even when the e-mail consisted of [p]laintiff presenting something positive for the school.

. . . .

56. Following issuance of a preliminary injunction barring the unlawful transfer of [p]laintiff in the First Lawsuit, in a blatant attempt to prevent [p]laintiff from fostering bonds with her colleagues, Principal Restel has consistently rotated [p]laintiff's grade-level partners. Upon information and belief, the practice instituted by Principal Restel to routinely rotate [p]laintiff's teaching partners from year-to-year is atypical and outside of the norm.

. . . .

65. Prior to issuance of the injunction in the First Lawsuit, [p]laintiff also experienced consistency with her grade-level teaching partners.

. . . .

67. But, since the issuance of the injunction, Principal Restel has prevented foundational relationships to develop at the third-grade level, and so every year [p]laintiff must begin anew with different grade-level teaching partners.

68. The constant changes at the third-grade level are atypical and have not gone unnoticed by Lincoln

16

School staff, many of whom have pointed out the issue to [p]laintiff without any prompting by [p]laintiff.

. . . .

70. Given that the First Lawsuit remains pending, [d]efendants' campaign against [p]laintiff has extended into 2021 and is ongoing to this day, culminating in a sham investigation stemming from fabricated allegations against [p]laintiff in an effort to discipline or try to force her to resign by exposing her to constant harassment and retaliation.

. . . .

126. To her knowledge, [p]laintiff is the only teacher who has been singled out with a disciplinary meeting and letter in her file. The only logical deduction is that this disparate treatment occurred as retaliation for [p]laintiff's filing of the pending First Lawsuit, especially given the blatant false statement that it was not a disciplinary meeting so as to deprive [p]laintiff of her right to counsel.

Accordingly, these allegations are sufficient to sustain a prima facie case of retaliation under the NJLAD. See Kachmar v. SunGuard Data Systems, Inc., 109 F.3d 173, 178 (3d Cir. 1997) (emphasizing that dismissing a complaint for failure to state a claim deprives the plaintiff of "the opportunity to delve further into the facts by discovery."). We are constrained to reverse dismissal of plaintiff's claim because, at this juncture, plaintiff's burden is only to state a

suggested cause of action. At the pleading stage, she has not yet had the benefit of discovery, which may or may not yield genuine issues of material fact.

We note the court further granted the Board's motion to dismiss finding qualified immunity shielded "the Board and its members" from liability under the NJLAD. We disagree. The NJLAD expressly provides that "the State, any political or civil subdivision thereof, and all public officers, agencies, boards, or bodies" are included within the statute's definition of "employer," and they are subject to liability for NJLAD violations to the same extent as private entities. N.J.S.A. 10:5-5(e); see also Brown v. Bordentown, 348 N.J. Super. 143, 151 (App. Div. 2002) ("An unlawful employment practice, or an unlawful discrimination practice or reprisal may impose liability on the governmental principal."). Therefore, qualified immunity is not afforded.

Individual Liability

N.J.S.A. 10:5-12(a) prohibits unlawful discrimination only by an "employer." An individual employee or supervisor is not considered an employer under the NJLAD definitions. See Tarr v. Ciasulli, 181 N.J. 70, 83 (2004). However, N.J.S.A. 10:5-12(e) makes it unlawful "'[f]or any person, whether an employer or an employee or not, to aid, abet, incite, compel[,] or coerce the doing of any of the acts forbidden [under the NJLAD],' and such

conduct may result in personal liability." Ibid. (alterations in original) (citation omitted) (quoting N.J.S.A. 10:5-12(e)).

An employee may be liable as an aider or abettor if a plaintiff establishes that:

> (1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of [their] role as part of an overall illegal or tortious activity at the time that [they] provide[] the assistance; [and] (3) the defendant must knowingly and substantially assist the principal violation.
>
> [Id. at 84 (fourth alteration in original) (quoting Hurley v. Atl. City Police Dep't, 174 F.3d 95, 127 (3d Cir. 1999)).]

Assessing whether a defendant "substantially assist[s]" the principal violator requires a court to balance five factors: "(1) the nature of the act encouraged, (2) the amount of assistance given by the supervisor, (3) whether the supervisor was present at the time of the asserted harassment, (4) the supervisor's relations to the others, and (5) the state of mind of the supervisor." Ibid. (citing Restatement (Second) of Torts, § 876(b) cmt. d (Am. L. Inst. 1979); Hurley, 174 F.3d at 127 n.27).

Because the motion court initially dismissed individual liability under a theory of aiding and abetting in reliance on its erroneous conclusion that plaintiff

19

failed to establish a retaliation claim against the Board, we need to examine the other reasons the court gave for dismissing the individual counts.

Count Four Against Principal Restel

Plaintiff argues the motion court erred in determining that she failed to allege sufficient facts to establish that Principal Restel knowingly took part in illegal retaliatory conduct. In her complaint, plaintiff alleged actions that made up a "pattern of retaliatory activity," including the meeting and investigation detailed above and the following:

> 52. . . . [S]ince the filing of the First lawsuit, Principal Restel stopped and/or refused to reply to [p]laintiff's emails, even when the e-mail consisted of [p]laintiff presenting something positive for the school.
>
> . . . .
>
> 54. In November 2018, even though [p]laintiff requested the same, Principal Restel refused to provide [p]laintiff with copies of [p]laintiff's student's PARCC scores.
>
> 55. Upon information and belief, Principal Restel has and does provide PARCC scores to other teachers.
>
> 56. Following issuance of a preliminary injunction barring the unlawful transfer of [p]laintiff in the First Lawsuit, in a blatant attempt to prevent [p]laintiff from fostering bonds with her colleagues, Principal Restel has consistently rotated [p]laintiff's grade-level partners. Upon information and belief, the practice instituted by Principal Restel to routinely rotate

[p]laintiff's teaching partners from year-to-year is atypical and outside of the norm.

. . . .

63.  The lack of continuity of staff at Lincoln School's third-grade level following the issuance of the injunction has adversely impacted [p]laintiff, the other staff members and—most importantly—the students.

. . . .

72.  When the students . . . returned to in-person learning in March 2021, Principal Restel continued to ignore [p]laintiff, and did not even stop by her classroom to welcome the students back to the school or introduce herself to a new student.

73.  Principal Restel also excluded [p]laintiff from critical information that she conveyed to other teachers and staff regarding school operations during the COVID-19 pandemic.

The motion court reasoned that plaintiff "failed to establish that Restel was aware of having a part in an illegal activity, because Restel has presumably done nothing more than fail to respond to emails, pass along PARCC scores, and rotate teachers within the school." In addition to ignoring a few of plaintiff's allegations, which must be accepted as true, this reasoning fails because the motion court found plaintiff failed to establish Restel's <u>awareness</u> of her "role as part of an overall illegal or tortious activity" based on an assertion her actions were <u>legal</u>. <u>See</u> <u>Tarr</u>, 181 N.J. at 84.

Giving plaintiff the benefit of all due inferences, she alleged more than enough facts to establish that Restel was "knowingly and substantially assist[ing] the principal violation." See ibid. For example, plaintiff alleged facts demonstrating not only Restel's awareness of her role in tortious activity, but also her knowing participation:

> 130. In particular, upon information and belief, Union representatives mentioned to Principal Restel[] that[,] in contrast to [d]efendant Sarno's [private conversation], another teacher ([plaintiff]) had received discipline for not wearing a mask.

> 131. Upon information and belief, when directly confronted by Union representatives with this discrepancy, Principal Restel responded by acknowledging it and admitting: "I know."

Further, plaintiff alleged sufficient facts to demonstrate Restel "substantially assisted" in tortious activity. Plaintiff alleged that Restel subjected her to disparate treatment by refusing to answer emails, refusing to share her students' PARCC scores, failing to visit plaintiff's students following the return to in-person instruction, and failing to share changes in Covid-19 policies with her.

We must balance five factors to assess whether plaintiff claimed Restel "substantially assisted" the Board in retaliating against plaintiff. See Tarr, 181 N.J. at 84. Because the "act[s] encouraged" were part of an alleged pattern of

22

retaliatory activity, "the nature of the act[s] encouraged," were, by definition, retaliatory. These actions were allegedly executed, or omitted, by Restel, so "the supervisor" gave a significant "amount of assistance" in this allegedly retaliatory pattern of actions; likewise, plaintiff alleged she "was present at the time of the asserted harassment." Finally, plaintiff alleged Restel made a specific statement that demonstrated her "state of mind" and awareness of the disparate treatment. Plaintiff, thus, adequately alleged facts that, if proven, would support a claim of aiding and abetting retaliation under the NJLAD against Restel. Thus, Count Four against Restel should not have been dismissed.

Counts Three, Six, and Seven as to Dr. Glazer and Board Members Kucinski, and Dancheck Martin

Plaintiff next argues the trial court erred in determining that she failed to allege sufficient facts to establish that Glazer, Kucinski, and Dancheck Martin knowingly took part in illegal retaliatory conduct.

According to the court, plaintiff "failed to establish individual liability as to Glazer because she was obligated to authorize an investigation." The court further emphasized that "the facts do not . . . sufficiently show that Glazer, individually, had any involvement with the complained of retaliation beyond authorizing an investigation which she was legally obligated to do." And, plaintiff's claims against Kucinski and Dancheck Martin fail on the merits,

because Kucinski and Dancheck Martin were obligated to authorize the complained-of investigation into Sarno's complaints, and "the facts [alleged] do not . . . sufficiently show that these [defendants], individually, had any involvement with the complained of alleged retaliation beyond authorizing an investigation they were duty bound to approve."

Plaintiff's claim against Dr. Glazer is based on her attendance at the meeting regarding plaintiff's violation of the District's masking policy. The complaint states, Dr. Glazer "knowingly and substantially assisted in retaliating against [plaintiff], including by participating in the meeting regarding [the District's masking policy]." Accepting plaintiff's allegations as true, Dr. Glazer's role as superintendent and attendance at the mask policy meeting are insufficient to support an aiding and abetting claim.

The court correctly determined the complaint "fail[ed] to otherwise plead facts to suggest [Dr. Glazer] was involved, even unknowingly, in any wrongful conduct, let alone facts showing her encouragement or substantial assistance of the alleged conduct." Citing Failla v. City of Passaic, 146 F.3d 149, 159 (3d Cir. 1998), the court noted "[e]mployees are not liable as aider[s] and abettor[s] merely because they were present; rather, a knowing and substantial assistance of a wrongful act, coupled with awareness of the underlying act[']s illegality, is

24                                                                    A-2397-22

required." Absent from the complaint are facts showing Dr. Glazer performed a wrongful act, substantially assisted wrongful conduct, and/or was generally aware of the illegality of an act. The court correctly dismissed plaintiff's claim as to Dr. Glazer.

The court also correctly concluded plaintiff failed to allege sufficient facts to demonstrate Kucinski and Dancheck Martin knowingly and substantially assisted in retaliatory activity. The motion court was correct that Kucinski and Dancheck Martin's authorization of Stern's investigation into plaintiff cannot support a prima facie claim against them. Not only are Kucinski and Dancheck Martin duty-bound to investigate complaints, but plaintiff explicitly disavows the claim that the investigation itself was retaliatory. Plaintiff has specifically noted that the method of conducting the investigation was the retaliation at issue, not the fact that an investigation was conducted. Plaintiff does not allege any facts to support a claim that Kucinski and/or Dancheck Martin authorized the investigation to be conducted in a manner that deprived plaintiff of her rights and harassed her with a sham investigation.

Count Five as to Respondent Sarno

Plaintiff claims the motion court erred by dismissing Count Five as to Sarno, because "Sarno is the one who lodged the complaint that raised both the

2016 Lawsuit and three other issues." Plaintiff also argues "discovery is warranted to determine if [Sarno] is an employer under the NJLAD, as opposed to a coworker." (citing Tarr, 181 N.J. at 82-83).

The motion court held "Sarno cannot be held individually liable because [respondent] Sarno is not an employer under the NJLAD, but rather, a coworker" of plaintiff. (citing Tarr, 181 N.J. at 82-83). The motion court concluded by stating that plaintiff "concede[d] the issue as to . . . Sarno, as she cannot be held individually liable under NJLAD." The Tarr Court has held that an individual employee, lacking supervisory authority, cannot be an "employer" and, therefore, cannot be individually liable under the NJLAD. 181 N.J. at 83. Such individual NJLAD liability is distinguishable, however, from the aiding and abetting individual liability permitted by N.J.S.A. 10:5-12(e). See Cicchetti v. Morris Cnty. Sheriff's Off., 194 N.J. 563, 591 (2008) (distinguishing between a lack of individual liability under the NJLAD for co-employees and a lack of aiding and abetting liability). The aiding and abetting subsection explicitly makes it illegal for "any person, whether an employer or an employee or not, to aid, abet, incite, compel[,] or coerce the doing of any of the acts forbidden under this act, or to attempt to do so." N.J.S.A. 10:5-12(e) (emphasis added). Thus, an individual need not be a supervisor for aiding and abetting liability to attach

under the NJLAD.

Plaintiff based her claim of aiding and abetting on Sarno's filing of a four-point complaint against her that led to the purportedly sham investigation conducted by the third-party investigator. She disputed Sarno's version of events upon which three of the four complaints were based, and declined to comment on the fourth complaint, as it related to Andreula I. Her disagreement with the merits of Sarno's complaints notwithstanding, plaintiff's claims regarding the investigation hinged not on the fact that the investigation occurred, but on the fact that the investigation was run in a manner that rendered it a sham and harassment. Plaintiff failed to allege any facts to support a claim that Sarno knowingly and substantially assisted in conducting the investigation in the complained-of manner. Therefore, plaintiff's claim against Sarno of aiding and abetting under the NJLAD, fails on its merits.

## IV.

We note, however, dismissal of a complaint for failure to state a claim pursuant to Rule 4:6-2(e) is "ordinarily without prejudice." Smith v. SBC Commc'ns Inc., 178 N.J. 265, 282 (2004). Dismissal of a complaint with prejudice "is [a] drastic punishment and should not be invoked except in those cases where the actions of the party show a deliberate and contumacious

27

disregard of the court's authority." Kosmowski v. Atl. City Med. Ctr., 175 N.J. 568, 575 (2003) (quoting Allegro v. Afton Vill. Corp., 9 N.J. 156, 160-61 (1952)). Thus, although we conclude the dismissals of counts three, five, six, and seven were warranted, on remand, the orders should be amended to be without prejudice.

Finally, we emphasize that the only issue before us is whether the allegations of plaintiff's complaint are sufficient to survive a motion under Rule 4:6-2(e) to dismiss for failure to state a claim. After appropriate discovery has been conducted, either party may file a motion for summary judgment. Accordingly, the order dismissing count one against the Board and count four against Principal Restel are reversed, and the case is remanded to the trial court for further proceedings in conformity with this opinion.

To the extent that we have not addressed any of plaintiff's remaining arguments, we conclude they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed in part and reversed and remanded in part. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2397-22