# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3445-24

BARBARA SALVERO,

     Plaintiff-Appellant/
     Cross-Respondent,

v.

CITY OF ELIZABETH and
JAMES COSGROVE,

     Defendants-Respondents/
     Cross-Appellants.

_____

Submitted May 13, 2026 – Decided June 17, 2026

Before Judges Mayer and Paganelli.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Docket No. L-3295-19.

Castronovo & McKinney, LLC, attorneys for appellant/cross-respondent (Paul Castronovo, of counsel and on the briefs; Kimberly A. O'Sullivan, on the briefs).

La Corte, Bundy, Varady & Kinsella, attorneys for respondent/cross-appellant City of Elizabeth; Kologi Simitz, attorneys for respondent James Cosgrove

(Robert F. Varady, of counsel; Michael S. Simitz, of counsel and on the joint briefs; Christina M. DiPalo, on the joint briefs).

PER CURIAM

Plaintiff Barbara Salvero appeals from the following orders: (1) an August 28, 2024 order partially granting summary judgment in favor of defendants City of Elizabeth (City) and James Cosgrove; (2) an April 3, 2025 order ruling on several motions in limine; (3) a June 9, 2025 order denying her motion in limine to allow evidence of instances of sexual harassment she did not personally observe and denying her motion for reconsideration of the August 28 order; and (4) a June 23, 2025 order dismissing her complaint with prejudice.

Defendants cross-appeal from the August 28, 2024 order denying the portion of their summary judgment motion based on the entire controversy doctrine. Cosgrove appeals from the portion of the August 28 order denying his motion for summary judgment on plaintiff's aiding and abetting claims.

We reverse the August 28, 2024 order granting partial summary judgment to defendants and the June 23, 2025 order dismissing plaintiff's complaint with prejudice. We remand for a trial on the merits of plaintiff's discrimination claims. We vacate the orders on the parties' in limine motions. We affirm as to issues raised in defendants' cross-appeals.

2

We recite the facts from the motion record and our decision in <u>Salvero v. City of Elizabeth</u>, (<u>Salvero I</u>) No. A-1110-15 (App. Div. Dec. 1, 2017). Plaintiff is a City police officer. From 1998 until 2019, Cosgrove was the head of the City's police department, as its police director.

The City has an anti-harassment policy addressing conduct that constitutes harassment. The City also has an anti-discrimination policy. The City's policies specify the procedure for reporting and investigating incidents of harassment and discrimination. Plaintiff filed several complaints against members of the City's police department under these policies.

According to plaintiff, between 2015 and 2019, Cosgrove allegedly called her a "cunt" and a "bitch" on several occasions. In February 2019, plaintiff learned Cosgrove regularly referred to her using these vulgar names when speaking with plaintiff's direct superiors. Plaintiff also claimed Cosgrove stared her down and gave her "dirty looks" during the same time frame. Plaintiff further asserted Cosgrove made inappropriate and inflammatory comments directed to other City employees based on their race or gender between 2015 and 2019.

According to defendants, in January 2019, plaintiff heard about an investigation by the Union County Prosecutor's Office (UCPO) into Cosgrove's

3

alleged workplace misconduct and harassment. However, plaintiff made no complaints against Cosgrove until February 2019 when she learned other City employees filed complaints regarding Cosgrove's behavior.

In March 2019, plaintiff sent a letter to the Governor reporting Cosgrove's alleged misconduct and harassment. She also filed a report with the City Police Department's Internal Affairs section asserting claims against Cosgrove. According to plaintiff, Internal Affairs took no action except to forward her report to the UCPO. A week later, plaintiff sent a letter to the Attorney General reciting her complaints about Cosgrove. About a month after plaintiff filed her report with Internal Affairs, the Attorney General's Office issued an April 16, 2019 press release reporting the UCPO's investigation of Cosgrove and requesting Cosgrove's resignation because Cosgrove used "racist and misogynistic slurs" when discussing his staff.

During the most recent litigation, plaintiff underwent psychological evaluations. Plaintiff's expert concluded her emotional distress could be attributed to the working environment at the City's Police Department. The City's expert stated plaintiff's emotional distress could not be attributed to workplace harassment. However, the City's expert did attribute plaintiff's purported emotional distress to her prior lawsuits against defendants.

A-3445-24

The parties have an extensive litigation history.

On October 21, 2004, plaintiff sued defendants for discrimination. In 2008, a jury rejected plaintiff's claims.

On March 18, 2013, plaintiff again sued defendants for allegedly retaliating against her after her first lawsuit. In the second lawsuit, the trial court granted summary judgment to defendants. However, this court reversed and remanded the matter to the trial court. See Salvero I, slip op. at 26.

In 2019, just prior to the trial in her second lawsuit, plaintiff asked to adjourn the trial and re-open discovery to investigate the newly released UCPO report because that document might be relevant to her discrimination claims against defendants. The judge denied the requests. The matter proceeded to trial and the jury again rejected plaintiff's claims.

On September 19, 2019, plaintiff filed her third lawsuit against defendants. Plaintiff claimed Cosgrove discriminated against her based on her sex. She also alleged Cosgrove's behavior created a hostile work environment under the New Jersey Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -50.

In her complaint, plaintiff alleged the following incidents supporting her hostile workplace claim:

A-3445-24

• November 9, 2015 - Cosgrove referred to plaintiff as "cunt" for the first time.

• January 4, 2016 - Cosgrove stared at plaintiff and gave her dirty looks.

• January 5, 2016 - Cosgrove referred to plaintiff as "you bitch."

• May 20, 2016 - Cosgrove called plaintiff a "cunt."

• July 19, 2017 - Cosgrove called plaintiff a "cunt" in front of two ranking officers in the City's Police Department.

• July 19, 2017 - Cosgrove locked eyes with plaintiff and stared at her as she walked away.

• September 13, 2017 - Cosgrove again stared at plaintiff.

• September 18, 2017 - Cosgrove gave plaintiff a "dirty look" and stared at her.

• September 19, 2017 - Cosgrove called plaintiff a "bitch."

• Sometime between 2015 and 2018 - In plaintiff's presence, Cosgrove spoke to another City Police Department employee and said "you wanna watch out for that one.  She's unpredictable."

• In February 2019 - Based on the UCPO's report, plaintiff learned Cosgrove referred to her as a "cunt" multiple times when speaking to her superiors.

A-3445-24

• April 1, 2019 - When passing plaintiff in the stairwell, Cosgrove smirked and uttered, "what, you have nothing to say Barbara?"

Defendants filed answers. They denied the allegations in the complaint and raised several affirmative defenses, including the entire controversy doctrine and the City's anti-harassment and anti-discrimination policies.

After discovery, defendants moved for summary judgment. In their summary judgment motions, defendants argued for dismissal of plaintiff's claims based on the entire controversy doctrine, the statute of limitations, and promulgation of anti-harassment and anti-discrimination policies. In his motion for summary judgment, Cosgrove asserted he was not liable to plaintiff under theories of aiding and abetting within the LAD. Plaintiff opposed the motions.

On August 16, 2024, the judge heard argument on defendants' motions. In his written decision, the judge first addressed the statute of limitations defense. Citing Shepherd v. Hunterdon Developmental Center, 174 N.J. 1 (2002), the judge found plaintiff's claims based on Cosgrove's conduct from 2015 through July 2017 were barred by the applicable two-year statute of limitations.

The judge recited each hostile workplace incident alleged in plaintiff's third lawsuit. The judge found Cosgrove's comment on November 9, 2015 was

7

"a discrete, actionable, event" and "start[ed] the statute of limitations." The judge also found Cosgrove's comments in 2016 through 2017 "were each discrete and actionable." In rejecting plaintiff's assertion that the comments between 2015 and 2017 were part of a continuing pattern demonstrating a hostile workplace, the judge concluded

> [such an] interpretation of the law would eradicate the statute of limitations except in cases where there is only a single discrete event. Every case with two or more discrete events would become an ongoing wrong, dependent only on the date of the last discrete or non-discrete bad act of a defendant. Such is not the state of our law . . . .

Regarding the statute of limitations, the judge stated there was "a clear distinction between discrete acts and non-discrete acts" in that "[t]he former trigger[ed] the statute of limitations and the latter d[id] not." The judge specified discrete acts were acts of "discrimination or retaliatory adverse employment decision[s]" that represented "unlawful employment practice[s]." The judge explained the incidents between 2015 and 2017 involved Cosgrove calling plaintiff various slurs. The judge found those incidents constituted discrete acts which triggered the two-year statute of limitations. Because plaintiff did not file her lawsuit related to those incidents within two years of their occurrence, the judge deemed those claims time barred. However, the judge ruled plaintiff's

remaining allegations as to incidents involving Cosgrove after July 2017 were non-discrete acts and fell under the continuing violation doctrine. The judge allowed plaintiff's claims against defendants related to incidents post-dating 2017 to proceed.

The judge rejected defendants' argument that the City's anti-harassment and anti-discrimination policies and the City's investigation regarding plaintiff's allegations against Cosgrove entitled them to summary judgment. The judge found there were fact questions regarding Cosgrove's alleged harassing conduct and vile comments precluding summary judgment as a matter of law. The judge explained Cosgrove, as the head of the City's Police Department, made the alleged comments and displayed inappropriate behavior "without fear of consequence[s]." The judge concluded "a cogent argument could be made that it would defy credulity to believe that Cosgrove's actions and predilections were not known by all who interacted with him."

Although there may have been policies enacted by the City to address harassment and discrimination, the judge found a jury could conclude those policies "were not enforced as to Cosgrove." Therefore, the judge rejected defendants' argument that the City's anti-harassment and anti-discrimination policies warranted dismissal of plaintiff's claims.

9

Regarding the entire controversy doctrine, the judge found plaintiff was "precluded from amending her complaint to include the present claims" as part of her second lawsuit. The judge noted plaintiff tried to include Cosgrove's 2015 comments in her second lawsuit but was unable to do so because the judge denied her request to adjourn the trial and reopen discovery. Under the circumstances, the judge found the entire controversy did not apply.

Concerning Cosgrove's argument that he was not an aider or abettor to establish liability under the LAD and giving plaintiff every inference at the summary judgment stage, the judge found "Cosgrove performed wrongful acts and he was aware of his actions and did them with the purpose of creating a hostile environment." Accordingly, the judge held plaintiff could proceed with her individual liability claims against Cosgrove under the LAD as an aider or abettor of his own discriminatory conduct.

Regarding defendants' motion to preclude plaintiff from introducing comments made to the UCPO during its investigation of Cosgrove, the judge denied the relief without prejudice in the absence of "the exact comments sought to be admitted and the [sole] purpose of their admission." The judge directed the parties to file "a more specific application" in the future.

Plaintiff filed an in limine motion to preclude evidence relating to her prior lawsuits against defendants and to introduce the UPCO report at trial. The City moved in limine to preclude the Attorney General's press release. Cosgrove filed an in limine motion to bar the UCPO report, testimony from the UCPO investigators, the Attorney General's press release, and evidence of any time barred claims, and to permit questioning of plaintiff regarding her failure to timely report her claims without opening the door to the UCPO report.

The judge allowed admission of plaintiff's prior lawsuits as relevant to plaintiff's emotional distress damages claim. The judge explained "[c]redibility will be a significant issue, as will the totality of the circumstances in this decades long working relationship."

The judge denied plaintiff's in limine motion to admit the UCPO report, concluding the report contained double hearsay. He also distinguished the facts in this case from the facts in Carmona v. Resorts International Hotel, Inc., 189 N.J. 354, 376-78 (2007). The judge found the UCPO report was not an investigation of plaintiff but rather an investigation of her boss as "the head of a major police department." The judge stated the UCPO report resulted in "[n]o particular employment decisions as to the [p]laintiff, and, therefore, Carmona was distinguishable." Additionally, the judge determined plaintiff could call the

A-3445-24

individuals who purportedly made the statements contained in the UCPO report and the author of that report as witnesses at trial.

The judge reaffirmed his August 28, 2024 decision precluding plaintiff's introduction of time barred claims. He rejected plaintiff's argument that the barred incidents were admissible to prove her hostile workplace claims in demonstrating an overall picture of the workplace environment within the City's Police Department.

The judge granted defendants' in limine motion to bar the Attorney General's press release as evidence at trial. The judge concluded the press release had "very little probative value in any issues here with an extremely high likelihood of undue prejudice for the [d]efense." The judge found no evidence that the Attorney General "had any involvement . . . in the investigation."

Before the start of jury selection, plaintiff moved for reconsideration of the judge's statute of limitations decision barring acts and comments made by Cosgrove between 2015 and July 2017. Plaintiff argued the barred acts and comments were not discrete and the accumulation of the incidents over time rendered them actionable as part of her hostile work environment claim.

A-3445-24

The judge denied plaintiff's reconsideration motion. He reaffirmed his application of <u>Shepherd</u> to bar plaintiff's claims related to Cosgrove's acts and comments between 2015 and July 2017.

After these rulings, Cosgrove moved for involuntary dismissal of plaintiff's complaint under <u>Rule</u> 4:37-2(b). The City joined the motion.

In response to defendants' motion, plaintiff's counsel stated:

> Given your Honor's rulings on both the statute o[f] limitations, as well as the evidence, the case boils down to five dirty looks, one utterance of the word, bitch, and the comment, "Nothing to say, Barbara," [I] happen to agree, based upon those rulings, which [I] will appeal, that this does not meet the severe or pervasive standard of <u>Lehmann [v. Toys 'R' Us, Inc.</u>, 132 N.J. 587 (1993)] so [I] can't in good faith oppose the motion.

The judge concluded plaintiff's remaining allegations were "insufficient to meet the severe or pervasive standard." Therefore, the judge dismissed the case with prejudice in a June 23, 2025 order.

On appeal, plaintiff argues the judge misapplied the continuing violations doctrine by barring incidents of Cosgrove's conduct from 2015 through July 2017. Additionally, she contends the judge erred in denying her motions in limine to introduce evidence of the UCPO report and testimony from the UCPO's investigators. Further, plaintiff challenges the in limine order allowing

13

defendants to introduce evidence of her prior lawsuits. She also asserts the Attorney General's press release was admissible as evidence at trial.

In their cross-appeals, defendants argue the judge erred in denying their motion to dismiss plaintiff's claims as barred by the entire controversy doctrine. Cosgrove appeals from the order finding he could be personally liable under the LAD as an aider and abettor for creating a hostile workplace environment.

We first address plaintiff's argument the judge erred in partially granting summary judgment to defendants. Specifically, plaintiff challenges the judge's finding that some of Cosgrove's discriminatory conduct and statements were discrete acts and, therefore, barred by the two-year statute of limitations. She contends the judge misapplied Shepherd in rejecting the continuing violation doctrine to allow evidence regarding every alleged discriminatory act committed by Cosgrove. We agree.

We review a trial court's order granting summary judgment de novo, "applying the same standard as the trial court." Stewart v. N.J. Tpk. Auth./Garden State Parkway, 249 N.J. 642, 655 (2022). We view "the competent evidential materials presented . . . in the light most favorable to the non-moving party, [and determine whether they] are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-

14

moving party." Town of Kearny v. Brandt, 214 N.J. 76, 91 (2013) (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)); see also R. 4:46-2(c). If "the evidence 'is so one-sided that one party must prevail as a matter of law,'" courts should "not hesitate to grant summary judgment." Brill, 142 N.J. at 540 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).

The LAD's "overarching purpose is to eradicate discrimination in society" and "was enacted 'to protect the public's strong interest in a discrimination-free workplace.'" Savage v. Twp. of Neptune, 257 N.J. 204, 216 (2024) (quoting Lehmann, 132 N.J. at 587). Hostile work environment claims fall within the LAD. See Lehmann, 132 N.J. at 602.

"The statute of limitations for claims arising under the LAD is two years." Shepherd, 174 N.J. at 17-18 (citing Montells v. Haynes, 133 N.J. 282, 292 (1993)). "The continuing violation doctrine provides an exception to that limitations period." Id. at 18. Under the doctrine, "[w]hen an individual is subject to a continual, cumulative pattern of tortious conduct, the statute of limitations does not begin to run until the wrongful action ceases." Ibid. (alteration in original) (quoting Wilson v. Wal-Mart Stores, 158 N.J. 263, 272 (1999)).

> To establish a continuing violation based on a series of discriminatory acts, a plaintiff must show that

> (1) at least one allegedly discriminatory act occurred within the filing period and (2) the discrimination is "more than the occurrence of isolated or sporadic acts of intentional discrimination" and is instead a continuing pattern of discrimination.
>
> [Bolinger v. Bell Atlantic, 330 N.J. Super. 300, 307 (App. Div. 2000) (quoting Harel v. Rutgers, State Univ., 5 F. Supp. 2d 246, 261 (D.N.J. 1998)).]

The continuing violation doctrine precludes "the aggregation of discrete discriminatory acts for the purpose of reviving an untimely act of discrimination that the victim knew or should have known was actionable." Roa v. Roa, 200 N.J. 555, 569 (2010). In the context of hostile workplace claims, the distinction between discrete acts and non-discrete acts of discrimination has been that non-discrete acts are hostile work environment claims that by "'[t]heir very nature involve[] repeated conduct' of varying types and that '[s]uch claims are based on the cumulative effect of individual acts.'" Alexander v. Seton Hall Univ., 204 N.J. 219, 229 (2010) (quoting Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 115 (2002)). As the Court stated in Alexander, "knowledge of hostility and of ongoing acts consistent with that hostility in such a setting is insufficient to trigger the timeframe within which a LAD cause of action must be filed." Id. at 230. The continuing violation doctrine "was developed to allow for the aggregation of acts, each of which, in itself, might not have alerted the employee

16

of the existence of a claim, but which together show a pattern of discrimination."

Roa, 200 N.J. at 569.

The Shepherd Court distinguished "discrete discriminatory acts" from hostile work environment claims, explaining:

> Hostile environment claims are different in kind from discrete acts. Their very nature involves repeated conduct. The "unlawful employment practice" therefore cannot be said to occur on any particular day. It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own. Such claims are based on the cumulative [e]ffect of individual acts.
>
> . . . .
>
> In determining whether an actionable hostile work environment claim exists, we look to "all the circumstances," including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." . . . A hostile work environment claim is comprised of a series of separate acts that collectively constitute one "unlawful employment practice." . . . It does not matter, for purposes of the statute, that some of the component acts of the hostile work environment fall outside the statutory time period. Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.

17

That act need not, however, be the last act. As long as the employer has engaged in enough activity to make out an actionable hostile environment claim, an unlawful employment practice has "occurred," even if it is still occurring. Subsequent events, however, may still be part of the one hostile work environment claim[,] and a charge may be filed at a later date and still encompass the whole.

[174 N.J. at 19-20 (quoting <u>Morgan</u>, 536 U.S. at 116-17).]

Plaintiff asserted at least one allegation within a larger pattern of alleged discriminatory conduct within the LAD's two-year statute of limitations to support her hostile work environment claim. She argues the incidents from 2015 through July 2017 were not discrete acts. Rather, she contends those incidents were "ongoing acts of hostility" meeting the continuing violation doctrine's exception to the two-year statute of limitations for hostile workplace claims.

Having reviewed the record, we are satisfied the judge misapplied the Court's analysis in <u>Shepherd</u> by disregarding the interplay between discrete and non-discrete acts in the context of plaintiff's hostile work environment claims. The judge misstepped in finding Cosgrove's statements and actions between 2015 and July 2017 constituted discrete acts distinct from the larger pattern of Cosgrove's purported discriminatory conduct.

18

Plaintiff alleged a series of acts evidencing a pattern of discriminatory conduct by Cosgrove. The last incidents alleged in support of plaintiff's hostile workplace claim occurred in September 2017 and were part of Cosgrove's ongoing non-discrete discriminatory acts between 2015 and July 2017. Therefore, all of the alleged incidents supporting plaintiff's hostile work environment claim were timely under the continuing violation doctrine. Thus, we reverse the August 28, 2024 partial summary judgment order and remand to the trial court for a trial on plaintiff's hostile work environment claim.

We next consider the entire controversy doctrine issue raised in defendants' cross-appeals. Defendants contend the judge erred in denying their motion to dismiss plaintiff's complaint based on that doctrine. Under the idiosyncratic facts in this case, we disagree.

"The entire controversy doctrine embodies the principle that the adjudication of a legal controversy should occur in one litigation in only one court; accordingly, all parties involved in a litigation should . . . present in that proceeding all of their claims and defenses that are related to the underlying controversy." Cogdell v. Hosp. Ctr. at Orange, 116 N.J. 7, 15 (1989). The doctrine is premised upon "(1) the need for complete and final disposition through the avoidance of piecemeal decisions; (2) fairness to parties to the action

and those with a material interest in the action; and (3) efficiency and the avoidance of waste and the reduction of delay." DiTrolio v. Antiles, 142 N.J. 253, 267 (1995) (citing Codgell, 116 N.J. at 15). Rule 4:30A states that "[n]on-joinder of claims required to be joined by the entire controversy doctrine shall result in the preclusion of the omitted claims to the extent required by the entire controversy doctrine."

In determining whether a subsequent claim should be barred "under th[e entire controversy] doctrine, 'the central consideration is whether the claims against the different parties arise from related facts or the same transaction or series of transactions.'" Wadeer v. N.J. Mfrs. Ins. Co., 220 N.J. 591, 605 (2015) (quoting DiTrolio, 142 N.J. at 268). "[T]he polestar of the application of the rule is judicial 'fairness,'" meaning that, when deciding whether the doctrine applies, the panel "should consider fairness to the court system as a whole, as well as to all parties." Ibid. (quoting DiTrolio, 142 N.J. at 272) (internal quotation marks omitted).

Applying the "fairness" concept, the judge found the entire controversy doctrine did not bar plaintiff's claims in her third lawsuit because he precluded her from amending the second lawsuit to include the additional claims. Further, the judge explained he declined to adjourn the trial and reopen discovery in the

second lawsuit, which would have allowed plaintiff to pursue information in the UCPO report and given rise to the claims asserted in plaintiff's third lawsuit.

Based on the judge's rulings in the second lawsuit, plaintiff was deprived of the opportunity to investigate and assert the claims included in her third lawsuit as part of her second lawsuit. In January 2019, upon receipt of the UPCO report, plaintiff first learned the report might contain information relevant to her claims against Cosgrove. The UCPO report was released four years after the close of discovery in the second lawsuit. Plaintiff attempted to adjourn the trial in her second lawsuit and to re-open discovery to include information in the UCPO report to include additional claims against Cosgrove. However, the judge denied her requests.

The judge recognized his ruling in the second lawsuit precluded plaintiff from amending her complaint in that action based on information revealed in the UCPO report. Because she was denied the opportunity to present additional claims against Cosgrove as part of her second lawsuit, and applying the concept of fairness articulated in cases addressing the entire controversy doctrine, we are satisfied the judge did not err rejecting defendants' entire controversy doctrine argument.

We next address Cosgrove's argument the judge erred in finding he could be personally liable for plaintiff's hostile work environment claim as an aider and abettor under the LAD. He argues he cannot be found liable for aiding and abetting his own conduct. We disagree.

The LAD makes it unlawful for "any person" to " aid, abet, incite, compel or coerce" actions forbidden under its provisions and provides "such conduct may result in personal liability." Tarr v. Ciasulli, 181 N.J. 70, 83 (2004) (quoting N.J.S.A. 10:5-12(e)). Supervisors are not considered employers under the LAD, so they may be liable for acts of discrimination as "any person" who aided and abetted misconduct. See Cicchetti v. Morris Cnty. Sheriff's Off., 194 N.J. 563, 594 (2008).

To prove a supervisor aided and abetted a hostile work environment, a plaintiff must show:

> (1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance; [and] (3) the defendant must knowingly and substantially assist the principal violation.
>
> [Tarr, 181 N.J. at 84 (alteration in original) (quoting Hurley v. Atl. City Police Dep't, 174 F.3d 95, 127 (3d Cir. 1999)).]

In Hurley, the Third Circuit held supervisors could be personally liable for aiding and abetting their own conduct by violating their "duty to act against harassment" through "deliberate indifference or affirmative harassing acts," subjecting themselves and their employer to liability. 174 F.3d at 126. "New Jersey courts have held that an individual can aid and abet, not only the conduct of another person, but that person's own conduct." DeSantis v. New Jersey Transit, 103 F. Supp. 3d 583, 591 (D.N.J. 2015) (citing Cicchetti, 194 N.J. at 594); accord O'Toole v. Tofutti Brands, Inc., 203 F. Supp. 3d 458, 467 (D.N.J. 2016) ("[C]ourts construe the aiding and abetting theory broadly, such that an individual supervisor can aid and abet his own conduct."). Based on well-settled case law, we conclude the judge did not err in determining a jury could find Cosgrove, as plaintiff's supervisor, liable for aiding and abetting his own discriminatory conduct.

We next address the parties' challenges to the various in limine orders. Rule 4:25-8(a) defines motions in limine "as an application returnable at trial for a ruling regarding the conduct of the trial, including admissibility of evidence, which motion, if granted, would not have a dispositive impact on a litigant's case." A motion in limine is a "pretrial request that certain inadmissible evidence not be referred to or offered at trial." Cho v. Trinitas

Reg'l Med. Ctr., 443 N.J. Super. 461, 470 (App. Div. 2015) (quoting Black's Law Dictionary 1109 (9th ed. 2009)).

Courts generally disfavor in limine rulings on evidentiary issues prior to trial. See State v. Cordero, 438 N.J. Super. 472, 484 (App. Div. 2014). This is so because pretrial rulings on such issues are largely made "in the abstract and not in the context of facts adduced at trial." Bellardini v. Krikorian, 222 N.J. Super. 457, 464 (App. Div. 1988). "Where . . . the decision on the in limine motion itself requires analysis of evidence yet to be presented or credibility determinations, such motions should ordinarily be denied until a sufficient predicate is established." Cordero, 438 N.J. Super. at 484 (quoting Berrie v. Berrie, 252 N.J. Super. 635, 641-42 (App. Div. 1991)).

We need not reach the arguments regarding the in limine orders because defendants were granted partial summary judgment before the parties filed their motions in limine. That order likely impacted the in limine motion decisions. Our reversal of the August 28, 2024 partial summary judgment order may impact pre-trial evidentiary issues on remand for a trial on the merits. Therefore, we vacate all in limine orders.

The parties shall have the opportunity to file in limine motions regarding the admissibility of evidence or testimony before the trial. The trial judge is not

bound by the prior in limine rulings and, in his or her discretion, may defer ruling on any in limine motions pending a proffer during the trial as to the purpose of such evidence or testimony. We take no position on the outcome of any future in limine motions.

Reversed in part, affirmed in part, and vacated in part. We do not retain jurisdiction.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

*M.C. Harley*

Clerk of the Appellate Division